UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| ERIC WEINER, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>TIVITY HEALTH, INC., DONATO TRAMUTO, GLENN HARGREAVES and ADAM HOLLAND<br><br>　　　　　　　　Defendants. | Case No. _____<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS<br><br><br><br>DEMAND FOR JURY TRIAL |

## **INTRODUCTION**

Plaintiff Eric Weiner ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his

counsel, which included, inter alia: (a) review and analysis of relevant filings made by Tivity Health, Inc. ("Tivity Health" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of the defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons who purchased or otherwise acquired Tivity Health securities between February 24, 2017, and November 3, 2017, inclusive (the "Class Period"), seeking to recover damages for violations of the federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Tivity Health is a fitness program provider focused on targeted population health for people aged 50 and older. The company operates three main programs: SilverSneakers senior fitness, Prime fitness and WholeHealth Living. The SilverSneakers program is offered to members of Medicare Advantage, Medicare Supplement, and Group Retiree plans through a fitness network comprised of approximately 16,000 locations.

3.      For the fiscal year 2016, Tivity Health reported that 36% of its revenue from its continuing operations came from two major customers: Humana, Inc. and United Healthcare,

Inc. ("United Healthcare.")

4.    The Company made materially false and/or misleading statements, misrepresenting the SilverSneakers program's business prospects and its contract renewal negotiations with the United Healthcare customer; as a result, Tivity Health repeatedly artificially inflated the price of its securities.

5.    As the truth was revealed on November 6, 2017, Tivity Health's stock price declined $16.45, or nearly 34.24%, from a close of $48.05 per share on November 3, 2017, to close of $31.60 per share on November 6, 2017.

## JURISDICTION AND VENUE

6.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.    Venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

9.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10.    Plaintiff purchased Tivity Health securities within the Class Period and, as a result, was damaged thereby. Plaintiffs' certifications evidencing his transactions is attached

hereto as Exhibit A.

11. Defendant Tivity Health, Inc. is a Delaware corporation headquartered at 701 Cool Springs Boulevard, Franklin, TN 37067. Tivity Health common stock trade on the NASDAQ under the symbol "TVTY."

12. Defendant Donato Tramuto ("Tramuto") is and throughout the Class Period was the Company's Chief Executive Officer ("CEO.")

13. Defendant Glenn Hargreaves ("Hargreaves") was the Company's Chief Interim Financial Officer ("CIFO") from the beginning of the Class Period until June 14, 2017.

14. Defendant Adam Holland ("Holland") was the Company's Chief Financial Officer ("CFO") from June 14, 2017 to the end of the Class Period.

15. Defendants in Paragraphs 12-14 are collectively referred to herein as the "Individual Defendants."

16. Each of the Individual Defendants:

    a) directly participated in the management of the Company;

    b) was directly involved in the day-to-day operations of the Company at the highest levels;

    c) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    d) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    e) was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the

Company; and/or

f) approved or ratified these statements in violation of the federal securities laws.

17. Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Tivity Health's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

18. As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

19. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Tivity Health's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and

institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

20.     Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Tivity Health securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Tivity Health's business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Tivity Health securities at artificially inflated prices.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

<u>**Background**</u>

21.     Tivity Health is a fitness program provider focused on targeted population health for people aged 50 and older. The company operates three main programs: SilverSneakers senior fitness, Prime fitness and WholeHealth Living. The SilverSneakers program is offered to members of Medicare Advantage, Medicare Supplement, and Group Retiree plans through a fitness network comprised of approximately 16,000 locations.

22.     A substantial amount of Tivity Health's revenue from continuing operations

comes from two major customers: Humana, Inc. and United Healthcare, Inc.

**Materially False and Misleading Statements Issued During the Class Period**

23.    The Class Period begins on February 24, 2017. On February 23, 2017, after the market close, Tivity Health issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating results for the fourth fiscal quarter ended December 31, 2016 ("FY 2016 Press Release"). For the quarter, the Company reported revenues of $124.9 million, compared to revenues of $113.5 million in the previous year's comparable quarter. The Company stated in relevant part:

> **NASHVILLE, Tenn. (February 23, 2017) – Tivity Health, Inc. (NASDAQ: TVTY) today announced financial results for the fourth quarter and year ended December 31, 2016.**
>
> **Fourth-Quarter 2016 Financial Highlights**
>
> - Revenues were $124.9 million, up 10.1% from $113.5 million for the fourth quarter of 2015.
>
> - Net income from continuing operations was $12.1 million, an increase of 31.2% from $9.2 million for the fourth quarter of 2015. Adjusted net income from continuing operations increased 44.7%, to $14.0 million from $9.7 million for the fourth quarter of 2015, excluding pre-tax business separation costs and restructuring charges of $5.2 million and a $2.2 million positive adjustment to depreciation expense for the fourth quarter of 2016, and excluding pre-tax restructuring charges of $0.7 million for the fourth quarter of 2015. See pages 11-12 for a reconciliation of non-GAAP financial measures.
>
> - Net income from continuing operations per diluted share grew 20.0%, to $0.30 from $0.25 for the fourth quarter of 2015, and adjusted net income from continuing operations per diluted share grew 34.6%, to $0.35 from $0.26 for the fourth quarter of 2015.
>
> - Adjusted EBITDA was $29.1 million, or 23.3% of revenues, which excludes business separation and restructuring expenses, for the fourth quarter of 2016. See pages 11-12 for a reconciliation of non-GAAP financial measures.

- Funded debt was reduced $40.1 million during the quarter, including the conversion of a $20.0 million convertible subordinated promissory note by CareFirst Holdings, LLC in exchange for 892,458 shares of Tivity Health common stock. Funded debt at year-end declined to $218.1 million and the ratio of total debt to trailing 12 months EBITDA, as calculated under the Company's credit facility, improved to 1.9.

\* \* \*

**Summary**

"Since the completion of its business divestiture in July 2016, Tivity Health's consistent financial performance supports our expectation that our focused and streamlined business model will continue producing predictable and profitable growth," continued Mr. Tramuto. "We have built a strong market position as a leading provider of fitness and health improvement programs targeted to those who are age 50 and older. With approximately 111 million Americans in our targeted population, and more than 300,000 turning 65 every month, we have an exciting, long-term opportunity to scale our business, both by adding new members, programs, products and networks and by increasing participation among our millions of current members. Our ability to achieve these goals is enhanced by our programs, including our flagship program, SilverSneakers, that are highly aligned with the interests of our customers in keeping their members healthy and socialized and with the interests of our fitness center partners in driving fitness center volumes. ***Through the combination of attractive demographics, strong program alignment, and our demonstrated capabilities as a unique, scaled market leader, we are confident of our long-term opportunity to produce profitable growth and to increase shareholder value***."

Emphasis added.

24.     On March 6, 2017, Tivity Health filed a Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2016 ("2016 10-K"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. Throughout the 2016 10-K, Tivity Health reapproved the previous statements.

25.     Additionally, the Company revised the "Risk Factors" section of its 2016 10-K, stating in relevant part:

**A significant percentage of our revenues is derived from health plan customers.**

A significant percentage of our revenues is derived from health plan customers. The health plan industry may continue to consolidate, and we cannot assure you that we will be able to retain health plan customers, or continue to provide our products and services to such health plan customers on terms at least as favorable to us as currently provided, if they are acquired by other health plans that already participate in competing programs or are not interested in our programs. Further, consolidation among our customers, particularly our health plan customers that are part of larger healthcare enterprises, could provide these organizations with greater bargaining power, which may lead to further pressure on the prices for our products and services. In addition, a reduction in the number of covered lives enrolled with our health plan customers or in the payments we receive could adversely affect our results of operations. Our health plan customers are subject to continuing competition and reduced reimbursement rates from governmental and private sources, which could lead current or prospective customers to seek reduced fees or choose to reduce or delay the purchase of our services. ***Finally, health plan customers could attempt to offer services themselves that compete directly with our offerings or stop providing our offerings to their members.***

Emphasis added.

26.     On April 27, 2017, Tivity Health issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating results for the first fiscal quarter ended March 31, 2017 ("Q1 2017 Press Release"). For the quarter, the Company reported revenues of $141 million, compared to revenues of $126 million in the previous year's comparable quarter. The Company stated in relevant part:

NASHVILLE, Tenn. (April 27, 2017) – Tivity Health, Inc. (NASDAQ: TVTY) today announced financial results for the first quarter ended March 31, 2017.

First-Quarter 2017 Financial Highlights

- Revenues increased by 11.9% to $141.0 million compared with $126.0 million for the first quarter of 2016, driven by growth in all three of the Company's product lines.

- Net income from continuing operations was $15.5 million compared with $19.2 million for the first quarter of 2016. Results for the first quarter of 2017 include an effective income tax rate of 37.7% and the impact of pre-tax business separation and restructuring charges totaling $2.4 million. Results for the first quarter of 2016 include an effective income tax rate of 0%, due to tax benefits derived from utilizing net operating loss carryforwards from 2015 that were previously subject to a valuation allowance, as well as pre-tax restructuring charges of $39 thousand.

- Adjusted net income from continuing operations, excluding business separation and restructuring charges, was $16.9 million for the first quarter of 2017 and $19.2 million for the first quarter of 2016. For illustration, had net income from continuing operations for the first quarter of 2016 been subject to a normalized tax rate of 40.0%, it would have been $11.5 million. See pages 10-12 for a reconciliation of non-GAAP financial measures.

- Net income from continuing operations per diluted share was $0.38 compared with $0.52 for the first quarter of 2016, and adjusted net income from continuing operations per diluted share was $0.42 compared with $0.52 for the first quarter of 2016. For illustration, had net income from continuing operations for the first quarter of 2016 been subject to a normalized tax rate of 40.0%, net income from continuing operations per diluted share would have been $0.31. Weighted average diluted shares outstanding increased 10.0% for the first quarter of 2017 from the first quarter of 2016.

- Adjusted EBITDA, which excluded business separation and restructuring expenses, increased 26.3% to $31.8 million compared with $25.2 million for the first quarter of 2016. Adjusted EBITDA margin increased to 22.6% for the first quarter of 2017 compared with 20.0% for the first quarter of 2016. See pages 10-12 for a reconciliation of non-GAAP financial measures.

- Funded debt was $214.8 million at the end of the first quarter of 2017, and the ratio of total debt to trailing 12 months EBITDA, as calculated under the Company's then effective credit facility, improved to 1.8 from 1.9 at the end of 2016.

*       *       *

"We are pleased with our first-quarter financial results," said Donato Tramuto, Tivity Health's Chief Executive Officer. "Due to the strength of this performance and the visibility it gives us for the rest of 2017, we have increased our financial guidance for the full year.

"*We are also pleased to announce a three-year renewal of our SilverSneakers® contract with UnitedHealth Group, continuing a 20-year relationship with a partner who shares our commitment to active lifestyles. This renewal and many other renewals we have achieved to date are a clear indication of the value of both our brand and the services provided to our customers and their members through the SilverSneakers program*."

Glenn Hargreaves, Tivity Health's Interim Chief Financial Officer, added, "During the first quarter, we essentially completed our restructuring and business separation initiatives and realized cost savings that annualize to approximately $15 million from the restructuring, which contributed to expanding our adjusted EBITDA margin.

"Tivity Health's cash flow from operations for the first quarter of 2017 totaled $3.0 million. First-quarter cash flow reflects our expected seasonality due to the payment of the 2016 colleague bonus and the full-year 2016 401(k) Plan matching contributions. Cash flow for the first quarter was also reduced due to the timing of payments from two long-term customers, which have since been paid. Our guidance for free cash flow for the full year remains unchanged."

Emphasis added.

27.     The same day, during a conference call to discuss the Company's financial and operating results for the first fiscal quarter ended March 31, 2017 ("Q1 2017 Conf. Call"), the Company's CEO and Individual Defendant Tramuto stated in relevant part:

This thought provides I believe a great segue to our announcement today of the three year renewable of our contract with United Health extending our 20 year relationship with one of our largest and oldest clients. *We believe United Health values our ongoing commitment to reinvest in SilverSneakers and they understand the strength of our brand because of both its importance to their Medicare Advantage membership and the results we produce*. This improved depth of understanding led to a renewal that was completed on favorable terms.

28.     During the Q&A session of the Q1 2017 Conf. Call, Tramuto responded to

Barclays' Capital analyst Josh Raskin asking how the contract renewal would affect 2018, in relevant part:

>**Josh Raskin**
>
>Okay, perfect. And then just in terms of timing and how we should be thinking about contract updates the Medicare Advantage plans have their bids do June, and I'm assuming this is kind of the height of the let's make sure we have all our benefit design docked in a row. ***And so any other color you know obviously it's great to get united behind you, any other color on you know big contracts both positively or negatively in terms of that 2018 I guess what I would call the selling season now?***
>
>**Donato Tramuto**
>
>Yeah, what I can say to you, and I hope now that the level of confidence is there, we did say to you last month or it may have been two months ago we had our last earnings call that we were going to get this united wrap up. ***Let me tell you I am absolutely pleased at the intensity of the renewals and where we are at this point, in fact I would say we were ahead of what I would have had as my milestone, so it's a very solid outlook.***

Emphasis added.

29.     The above misleading statements led the Company's securities to an artificial inflation of $4.05, or nearly 13.70%, from a close of $29.55 per share on April 27, 2017, to close of $33.60 per share on April 28, 2017.

30.     On July 27, 2017, Tivity Health issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating results for the second fiscal quarter ended June 30, 2017 ("Q2 2017 Press Release"). For the quarter, the Company reported revenues of $138.9 million, compared to revenues of $125 million in the previous year's comparable quarter. The Company stated in relevant part:

>**NASHVILLE, Tenn. (July 27, 2017) – Tivity Health, Inc. (NASDAQ: TVTY) today announced financial results for the second quarter ended June 30, 2017.**

**Second-Quarter 2017 Financial Highlights**

- Revenues increased by 11.1% to $138.9 million compared with $125.0 million for the second quarter of 2016, driven by growth in all three of the Company's product lines.

- Net income from continuing operations was $17.2 million, or $0.41 per diluted share, compared with $20.0 million, or $0.54 per diluted share, for the second quarter of 2016. Results for the second quarter of 2017 include an effective income tax rate of 35.7%. Results for the second quarter of 2016 include an effective income tax rate of 0%, due to tax benefits derived from utilizing net operating loss carryforwards from 2015 that were previously subject to a valuation allowance. For illustration, had net income from continuing operations for the second quarter of 2016 been subject to a normalized tax rate of 40.0%, net income would have been $12.0 million or $0.32 per diluted share.

- Weighted average diluted shares outstanding for the second quarter of 2017 increased to 42.4 million, 13.8% higher than the second quarter of 2016. The diluted share count increase was significantly impacted by the 191% increase in the Company's weighted average stock price in the second quarter of 2017 compared with the second quarter of 2016.

- EBITDA increased 21.9% to $31.7 million compared with $26.0 million for the second quarter of 2016. EBITDA margin increased to 22.8% for the second quarter of 2017 compared with 20.8% for the second quarter of 2016. See pages 9-10 for a reconciliation of non-GAAP financial measures.

- Cash flow from operations was $37.0 million for the second quarter of 2017, and free cash flow totaled $36.0 million. Funded debt was $189.8 million at the end of the second quarter of 2017, and the ratio of total debt to trailing 12 months EBITDA, as calculated under the Company's credit facility, improved to 1.5 from 1.9 at the end of 2016.  At June 30, 2017, the Company had cash and cash equivalents of $7.8 million.

*      *      *

"Tivity Health continued to produce strong operating and financial results during the second quarter, through fierce execution from our colleagues throughout the Company," said Donato Tramuto, Tivity Health's Chief Executive Officer. "Due to our performance for the first six months of 2017 and the substantial visibility our business model provides into the

remainder of the year, we believe we are well-positioned to achieve our financial guidance for the full year.

"We are also pleased with our ongoing work on a variety of pilot projects that are designed to increase member engagement and participation and, thereby, improve the future rate of our revenue growth. We plan to continue investing in these projects throughout 2017 and into next year, and we expect to begin generating an initial return on investment beginning in 2018. ***We believe we have a tremendous long-term opportunity to increase participation in both our SilverSneakers® and Prime® programs within each program's existing base of millions of members who are already eligible to enroll and participate.*** While much work remains to be done on the pilots to understand their results and potential, we are encouraged by developments thus far. We believe this initiative will enable us to significantly expand the number of our members whose physical, emotional and social well-being are improved by our programs, helping them lead their best lives, with dignity, vitality and purpose."

Adam Holland, Tivity Health's Chief Financial Officer, added, "As anticipated, our second-quarter financial performance enabled us to make a reduction in funded debt during the quarter, even as we invested in the Company pilots and began to build our cash balance. We expect to continue each of these actions in the second half of 2017."

Emphasis added.

31.     On October 26, 2017, after the market closed, Tivity Health issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating results for the third fiscal quarter ended September 30, 2017 ("Q3 2017 Press Release"). For the quarter, the Company reported revenues of $137.7 million, compared to revenues of $125 million in the previous year's comparable quarter. The Company stated in relevant part:

**NASHVILLE, Tenn. (October 26, 2017) – Tivity Health, Inc. (NASDAQ: TVTY) today announced financial results for the third quarter and nine months ended September 30, 2017.**

**Third-Quarter 2017 Financial Highlights**

- Revenues increased by 10.1% to $137.7 million driven by growth in all three of the Company's product lines. This compares to revenues of $125.0 million for the third quarter of 2016.

- Net income from continuing operations was $19.9 million, or $0.46 per diluted share, compared with $4.8 million, or $0.12 per diluted share, for the third quarter of 2016. Results for the third quarter of 2017 include an effective income tax rate of 34.3%. Adjusted net income from continuing operations for the third quarter of 2016 was $11.9 million, or $0.31 per diluted share, which excludes income tax expense related to the first half of 2016, restructuring charges, business separation costs and income attributable to the reversal of deferred tax asset valuation allowance. See pages 9-12 for a reconciliation of non-GAAP financial measures.

- Weighted average diluted shares outstanding increased 13.3% to 43.5 million compared with the third quarter of 2016. The most significant factor driving the diluted share count increase was the 76% increase in the Company's weighted average stock price for the third quarter of 2017 compared with the third quarter of 2016.

- EBITDA was $35.3 million or 25.7% of revenue. EBITDA for the third quarter of 2016 was $24.4 million, and adjusted EBITDA was $26.2 million, or 21.0% of revenue, which excluded restructuring costs and business separation costs.

- Cash flow from operations was $33.6 million, and free cash flow totaled $31.8 million. Net funded debt was $151.3 million and the ratio of total debt to trailing 12 months EBITDA, as calculated under the Company's credit facility, improved to 1.2, compared with 1.9 at the end of 2016. At September 30, 2017, the Company had cash and cash equivalents of $4.9 million.

*       *       *

"We are very pleased with the substantial growth in earnings and our overall operating and financial performance for the third quarter," said Donato Tramuto, Tivity Health's Chief Executive Officer. "This performance reflects consistent execution by our colleagues throughout the Company and the power of our brand and has enabled us to raise our financial guidance for 2017. Although multiple hurricanes in September and October disrupted our members and networks in the affected areas, we believe the value our members place on the SilverSneakers® brand and on the program, to some degree mutes the impact of that disruption. This

value is tangibly evident in our annual member surveys, as well as in SilverSneakers' high Net Promoter Score.

"In addition to our strong financial performance for the quarter, we have seen continuing success in targeted initiatives designed to increase member awareness of our services through our social media presence, which is part of our broader marketing strategy. We will continue our work on these projects in the fourth quarter during the height of the Medicare Advantage open enrollment period. ***In 2018, we look forward to scaling the best of these projects that we believe will increase our growth rate beyond historical levels by increasing member enrollment and participation***."

Adam Holland, Tivity Health's Chief Financial Officer, added, "Our third quarter margin profile improved from the first half of 2017 due to lower than anticipated operating costs, primarily due to the average cost of member visits, and from reduced investment expenses due to timing. Our revised financial guidance incorporates previously discussed higher spending in the fourth quarter to support the Medicare Advantage open enrollment period, other planned marketing initiatives and a modest increase in spending on information technology. During the fourth quarter, we expect to continue reducing funded debt and building our cash position, concurrent with ongoing investments to drive increased member awareness and engagement."

Emphasis added.

32.     Thereafter, during a conference call to discuss the Company's financial and operating results for the third fiscal quarter ended September 30, 2017 ("Q3 2017 Conf. Call"), the Company's CEO and Individual Defendant Tramuto stated in relevant part:

In closing, let me now give you my perspective on our focus and opportunities for 2018. Now that Chip has provided an initial profile for our growth and margins.

First, our markets are very attractive with Medicare Advantage continuing to expand with some industry estimates for growth of as much as 8% for 2018.

Second, we already know that our awareness projects in digital strategy are a unique conduit for enrollment and eligibility checks.

Third, our high Net Promoter Score strongly difference – differentiates the SilverSneakers brand. I've indicated that we are focused on improving, both the strength of our brand and continuing to advance our NPS.

Fourth, we also believe that there's an opportunity in helping prospective health plan customers understand how they can leverage our investments in our NPS and digital strategy to possibly influence their own star ratings.

*Fifth, we expect 2018 to benefit from improved performance across our functional areas. For example, we achieved a contract renewal rate of over 99% for 2018. This hasn't happened since 2011 in the company. We produced a few new contracts that increased client penetration and had some former clients return home and come back to us*.

Lastly, we saw solid growth in our Prime business. 2017 year-to-date showed promising results in some of the co-marketing initiatives that we have launched. We expect to build on that success in 2018 with some broader newly designed marketing initiatives with a key partner that covers more than 27 million eligible lives.

*We're also approaching the end of 2017 with lots of exciting initiatives, lots of momentum and lots of opportunity.* We look forward to talking with you for our fourth quarter call in February to update you on our plans for 2018 and to provide a more detailed and refined financial outlook for the year based on final enrollment data being available to us for SilverSneakers in January.

Emphasis added.

33.     Consequently, Tivity Health artificially inflated the price of its securities by $6.55, or nearly 16.58%, from a close of $39.50 per share on October 26, 2017, to close of $46.05 per share on October 27, 2017.

34.     The statements in paragraphs ¶28-33 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) Tivity Health was aware of United Healthcare's plan to expand its fitness benefit to seniors, (ii) the aforementioned expansion

would represent direct competition to Tivity Health's core program SilverSneaker, and (iii) as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about Tivity Health's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## The Truth Emerges

35.     On November 6, 2017, United Healthcare issued a press release announcing expansion of its fitness benefits ("November 2017 United Healthcare Press Release"). The press release stated in pertinent part:

### UnitedHealthcare Adds New Fitness Benefit to Medicare Advantage Plans in Austin

### Optum Fitness Advantage available at no additional cost to many people in UnitedHealthcare Medicare Advantage Plans

November 06, 2017 10:15 AM Eastern Standard Time

AUSTIN, Texas--(BUSINESS WIRE)--People enrolled in UnitedHealthcare Medicare Advantage plans in Austin will soon have a new fitness benefit that offers access to exercise classes, workout equipment and social activities at participating fitness locations.

***In January 2018, Optum Fitness Advantage will be available at no additional cost to people enrolled in eligible UnitedHealthcare Medicare Advantage plans in 11 states through a large network of participating fitness centers. Plan participants will have access to the same services, privileges, classes and programs as the fitness centers' standard members, including waiver of all enrollment fees.***

"Optum Fitness Advantage offers people enrolled in UnitedHealthcare Medicare Advantage plans an opportunity to stay active and engaged in their communities in a way that supports their overall health and well-being," said Chris Abbott, CEO of UnitedHealthcare Medicare & Retirement in Texas.

Fitness centers participating in the Optum Fitness Advantage program in Austin include participating locations of 24 Hour Fitness, Anytime Fitness, Gold's Gym, LA Fitness, Snap Fitness and YouFit Health Clubs. Locations also include local participating YMCAs.

The Optum Fitness Advantage program, launched by UnitedHealthcare in Washington state and New Jersey in January 2017, has been well received by local Medicare Advantage plan participants.

"I go to my local YMCA almost daily at no additional cost, which means a lot when living on a fixed income," said Nancy Chiu, a UnitedHealthcare Medicare Advantage member in New Jersey. "I am grateful that UnitedHealthcare is offering a fitness program that helps me improve my health and well-being."

"Anytime Fitness and Self Esteem Brands look forward to serving UnitedHealthcare Medicare Advantage members as part of the Optum Fitness Advantage network," said Chuck Runyon, CEO of Anytime Fitness. "We look forward to working together to provide more fitness choices to seniors, both inside and outside of the gym."

UnitedHealthcare, which has exclusive rights to offer AARP-branded Medicare plans, serves more than 4.3 million people in Medicare Advantage, 4.9 million people through its portfolio of Part D prescription drug plans, and 4.4 million beneficiaries through its Medicare supplement plans.

Altogether, UnitedHealthcare serves one in five Medicare beneficiaries nationwide.

Emphasis added.

36. On this news, Tivity Health's stock price declined $16.45, or nearly 34.24%, from a close of $48.05 per share on November 3, 2017, to close of $31.60 per share on November 6, 2017.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this action on behalf of all individuals and entities who purchased or otherwise acquired Tivity Health securities on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

38. The members of the Class are so numerous that joinder of all members is

impracticable. Throughout the Class Period, Tivity Health securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tivity Health or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of November 3, 2017, Tivity Health had 39,616,901 outstanding shares of common stock. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

39.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

40.     Plaintiffs have and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b)     whether the defendants acted knowingly or with deliberate recklessness in

issuing false and misleading financial statements;

(c)    whether the price of Tivity Health securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION/ECONOMIC LOSS

43.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Tivity Health's misconduct and its lack of operational and financial controls was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Tivity Health's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to

artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

44.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Tivity Health's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Tivity Health's securities to be artificially inflated. Plaintiff and other Class members purchased Tivity Health's securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

## SCIENTER ALLEGATIONS

45.     On November 6, 2017, by the end of the trading day, Tivity Health issued a press release ultimately disclosing knowledge of the United Healthcare fitness benefit expansion ("November 2017 Tivity Health Press Release"), stating in relevant part:

> UnitedHealthcare's plans, along with all of our other ongoing conversations with our healthcare plan customers regarding their fitness benefit offerings, are fully reflected within our preliminary 2018 financial guidance set forth in our earnings call on October 26, 2017, for the quarter ended September 30, 2017.

46.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Tivity Health, their control over, and/or receipt and/or modification of Tivity Health's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Tivity Health, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

47. At all relevant times, the market for Tivity Health's common stock was an efficient market for the following reasons, among others:

(a) Tivity Health's common stock met the requirements for listing and was listed and actively traded on the New York Stock Exchange, a highly efficient and automated market;

(b) Tivity Health communicated with public investors via established market communication mechanisms, including dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c) Tivity Health was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d) Unexpected material news about Tivity Health was reflected in and incorporated into the Company's stock price during the Class Period.

48.     As a result of the foregoing, the market for Tivity Health's common stock promptly digested current information regarding Tivity Health from all publicly available sources and reflected such information in Tivity Health's stock price. Under these circumstances, all purchasers of Tivity Health's common stock during the Class Period suffered similar injury through their purchase of Tivity Health's common stock at artificially inflated prices, and a presumption of reliance applies.

49.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## NO SAFE HARBOR; INAPPLICABILITY OF THE BESPEAKS CAUTION DOCTRINE

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

51.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

52.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the

speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Tivity Health who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

### COUNT I

### Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder Against All Defendants

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Tivity Health securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, each of the Defendants took the actions set forth herein.

55. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to

maintain artificially high market prices for Tivity Health securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Tivity Health as specified herein.

57. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Tivity Health's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Tivity Health and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Tivity Health securities during the Class Period.

58. Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the

creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

59.　　Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Tivity Health's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.　　As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Tivity Health's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Tivity Health's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the

integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Tivity Health's securities during the Class Period at artificially high prices and were or will be damaged thereby.

61.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Tivity Health's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Tivity Health securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

62.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

64.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

## Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

65.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.    Tramuto, Hargreaves, and Holland acted as controlling persons of Tivity Health within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Tramuto, Hargreaves and Holland had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Tramuto, Hargreaves and Holland were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

67.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68.    As set forth above, Tivity Health, Tramuto, Hargreaves, and Holland each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

69.    By virtue of their positions as controlling persons, Tramuto, Hargreaves, and

Holland are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

70. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

71. Plaintiff hereby demands a trial by jury.


Dated: November 20, 2017            **HOLIFIELD JANICH RACHAL & ASSOCIATES, PLLC**

        */s/ Al Holifield*
        Al Holifield, Esq. (BPR #015494)
        11907 Kingston Pike, Ste. 201
        Knoxville, TN 37934
        Tel: (865) 566-0115
        Fax: (865) 566-0119
        Email: aholifield@holifieldlaw.com

        *Liaison Counsel*

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500 ext. 102
Fax: (212) 363-7171
Email:ek@zlk.com

*Counsel for Plaintiff and Proposed Lead Counsel*
*for the Class*
*(Pro Hac Vice Application to be submitted)*