IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ERIC WEINER, Individually and on Behalf of All Others Similarly Situated**,** | ) ) ) ) | CIVIL ACTION NO.: 3:17-cv-01469 |
| Plaintiff, | ) | Chief Judge Crenshaw Magistrate Judge Newbern |
| v. | ) ) | |
| TIVITY HEALTH, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II.  FACTUAL BACKGROUND ................................................................................................3

III. APPLICABLE STANDARD................................................................................................5

IV. ARGUMENT AND CITATION OF AUTHORITIES............................................................7

    A.  The Complaint Should be Dismissed Because it Fails to Plead Any Actionable
        Misstatement or Omission. .................................................................................................7

        1.  All of the Alleged Statements Should Be Dismissed Because the Complaint
             Fails to Allege Materiality. ............................................................................................8

        2.  The Risk Disclosure Statements Should Be Dismissed Because They Are Not
             Actionable as a Matter of Law..................................................................................11

        3.  The Forward-Looking Statements Should Be Dismissed Pursuant to the
             Reform Act's Safe Harbor Provision. .......................................................................12

        4.  The Statements Regarding the Contract Renewal Should Be Dismissed
             Because the Complaint Fails to Allege Falsity.........................................................15

    B.  The Complaint Should be Dismissed Because it Fails to Allege Facts Sufficient to
        Give Rise to a Strong Inference of Scienter....................................................................15

        1.  The Complaint's Allegations Viewed Holistically Fail to Allege a Strong
             Inference of Scienter. ................................................................................................16

        2.  The Complaint Fails to Plead the Helwig Factors. ...................................................19

    C.  The Section 20(a) Claim Should Be Dismissed................................................................21

V.  CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) .................................................................20

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013)..................................................18

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................................8

*Bondali v. Yum! Brands, Inc.*,
620 F. App'x 483 (6th Cir. 2015) .................................................. *passim*

*Campbell v. Lexmark Int'l Inc.*,
234 F. Supp. 2d 680 (E.D. Ky. 2002) ...................................................21

*Climo v. Office Depot, Inc.*,
Case No. 11-80364, 2012 WL 13018593 (S.D. Fla. May 24, 2012) .......................................1

*Coates v. Heartland Wireless Commc'ns, Inc.*,
55 F. Supp. 2d 628 (N.D. Tex. 1999) ..................................................18

*In re Comshare Inc. Sec. Litig.*,
183 F.3d 542 (6th Cir. 1999) ........................................................7, 21

*Courie v. Alcoa Wheel & Forged Prods.*,
577 F.3d 625 (6th Cir. 2009) ..............................................................5

*Darby v. Century Bus. Servs., Inc.*,
96 F. App'x 277 (6th Cir. 2004) ..........................................................7

*Doshi v. Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) .......................................................6, 16

*Gavish v. Revlon, Inc.*,
No. 00-7291, 2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004) ..................9

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
436 F. Supp. 2d 873 (N.D. Ohio 2006)................................................20

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) ...........................................................13

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) ...................................................... *passim*

*In re Humphrey Hospitality Trust, Inc. Sec. Litig.*,
   219 F. Supp. 2d 675 (D. Md. 2002) ............................................................20

*Janbay v. Canadian Solar, Inc.*,
   No. 10-4430, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ......................................9

*Johnson v. Pozen Inc.*,
   No. 07-599, 2009 WL 426235 (M.D.N.C. Feb. 19, 2009) .....................................18

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)................................................................18

*Kuyat v. BioMimetic Therapeutics, Inc.*,
   747 F.3d 435 (6th Cir. 2014) .............................................................7

*Ley v. Visteon*,
   543 F.3d 801 (6th Cir. 2008) .........................................................6, 17

*Lubbers v. Flagstar Bancorp. Inc.*,
   No. 14-CV-13459, 2016 WL 520944 (E.D. Mich. Feb. 10, 2016)...........................6

*May v. Apricus Biosciences, Inc.*,
   No. 3:13-cv-00554, 2014 WL 4897938 (M.D. Tenn. Sept. 20, 2014) ....................17

*Miller v. Champion Enters. Inc.*,
   346 F.3d 660 (6th Cir. 2003) .....................................................7, 12, 13

*Minneapolis Firefighters' Relief Ass'n. v. MEMC Elec. Materials, Inc.*,
   641 F.3d 1023 (8th Cir. 2011) ...........................................................18

*In re Nokia OYJ (Nokia Corp.) Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006).....................................................9

*In re Omnicare, Inc. Sec. Litig.*,
   769 F.3d 455 (6th Cir. 2014) ..................................................... *passim*

*Pension Fund Group v. Tempur-Pedic International, Inc.*,
   614 F. App'x 237 (6th Cir. 2015) .......................................................8, 9

*In re PetSmart, Inc., Sec. Litig.*,
   61 F. Supp. 2d 982 (D. Ariz. 1999) .....................................................21

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998) ....................................................21

*Ricker v. Zoo Entm't, Inc.*,
   534 F. App'x 495 (6th Cir. 2013) .....................................................7, 16

*Rubin v. Schottenstein*,
    143 F.3d 263 (6th Cir. 1998) ..................................................................................8

*Sarafin v. BioMimetic Therapeutics, Inc.*,
    No. 11-0653, 2013 WL 139521 (M.D. Tenn. Jan. 10, 2013) ................................1, 2

*Smith v. Circuit City Stores, Inc.*,
    286 F. Supp. 2d 707 (E.D. Va. 2003) ....................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................4, 6, 16

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ..................................................................................5

*Zaluski v. United American Healthcare Corporation*,
    527 F.3d 564 (6th Cir. 2008) ..........................................................................8, 9, 10

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................1, 7, 16

15 U.S.C. § 78u-5 .......................................................................................................12, 13

15 U.S.C. § 78t..................................................................................................................21

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This putative securities class action should be dismissed because it is based on nothing more than an announcement by one of Tivity Health, Inc.'s ("Tivity" or the "Company") customers that it planned to offer a competing program in only eleven of the fifty states that Tivity served.  The announcement of unfavorable news simply does not equate to securities fraud.  Indeed, Congress passed the Private Securities Litigation Reform Act (the "Reform Act")[1] "to stop the practice of pleading fraud by hindsight, which occurs when a plaintiff tries to bring a securities fraud claim by cobbling together speculative allegations '***based on nothing more than a company's announcement of bad news***.'" *Climo v. Office Depot, Inc.*, Case No. 11-80364, 2012 WL 13018593, *3 (S.D. Fla. May 24, 2012) (emphasis added). The First Amended Complaint ("Complaint" or "Compl.") abjectly fails to turn news of competition Tivity would face into a securities fraud complaint that survives the Reform Act's "heightened pleading standards." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014).

As discussed below, the sole theory in the Complaint is that Defendants[2] should have disclosed to investors that one of its customers, United Healthcare ("UHC"), was offering a competing program to Tivity's SilverSneakers program in two states and that, starting in 2018, it would offer that competing program in nine additional states.  *See infra* at § II.  The Complaint's theory is untenable.  The securities laws, of course, do not require disclosure of every single fact that occurs at a company.  *Sarafin v. BioMimetic Therapeutics, Inc.*, No. 11-0653, 2013 WL 139521, at *8 (M.D. Tenn. Jan. 10, 2013) ("A company is not required to divulge to the public each tidbit of information it possesses 'because corporations might otherwise face potential

---

[1]  15 U.S.C. § 78u-4, *et seq.*

[2]   Defendants Donato Tramuto (current Tivity Board member and Chief Executive Officer), Glenn Hargreaves (Tivity's current Chief Accounting Officer and former Chief Interim Financial Officer), and Adam Holland (Tivity's current Chief Financial Officer) are referred to as the "Individual Defendants" and, along with Tivity, as the "Defendants."

second-guessing in a subsequent disclosure suit, a regime that would threaten to deluge investors with marginally useful information, and would damage corporations' legitimate needs to keep some information non-public'"). Rather, only material information must be disclosed and that information must be disclosed only when there is a duty to disclose. *Id.*

The Complaint cannot survive dismissal for the overriding reason that it does not, and cannot, allege that UHC's competing program had any material impact on Tivity. As the documents incorporated into the Complaint by reference demonstrate, Tivity's SilverSneakers program experienced a nearly 1.3 million-member increase year over year during the alleged class period and Tivity's revenues saw a $50 million year-over-year increase during the alleged class period. *See infra* at § II. Not only was Tivity a success story for its investors during the alleged class period, but Tivity cannot be said to have attempted to defraud anyone – Tivity forecasted at the outset of the alleged class period that it would achieve revenues of $550 million to $558 million, and Tivity achieved revenues of $556 million. *Id.*

The failure and inability of the Complaint to allege that the omitted information would have any impact on Tivity's bottom line or financial results requires dismissal under Sixth Circuit precedent. *See infra* at § IV(A)(1). Even if the Court finds that the Complaint somehow passes this hurdle, the Complaint should be dismissed for, among others, the following reasons:

- The Complaint attempts to allege liability based on risk factors or cautionary language that Tivity included in its filings with the Securities & Exchange Commission ("SEC"), *but* the Sixth Circuit expressly holds that a complaint based on this theory cannot survive dismissal. *See infra* at § IV(A)(2).

- The Complaint attempts to allege liability for forward-looking statements, *but* the Safe Harbor provision of the Reform Act immunizes those statements from liability

where, as here, they are accompanied by meaningful cautionary language. *See infra* at § IV(A)(3).

- The Complaint attempts to allege liability for statements describing Tivity's contract with UHC, **but** these statements are not actionable because the Complaint wholly fails to allege that these statements were false. *See infra* at § IV(A)(4).

- The Complaint attempts to allege the requisite element of an intent to defraud with the allegation that Defendants knew about UHC's competing program, **but** knowledge of an immaterial fact that does not need to be disclosed to investors simply does not allege the requisite strong inference of scienter. *See infra* at § IV(B)(1).

- The Complaint relies entirely on stock sales of one defendant and two non-defendants in an attempt to meet the Sixth Circuit's nine-factor scienter test, **but** the Sixth Circuit clearly holds that mere allegations of motive do not meet the standard. *See infra* at § IV(B)(2).

For these reasons and others developed below, the Complaint should be dismissed.

## II.    FACTUAL BACKGROUND

Tivity is a Tennessee-based provider of fitness and health improvement programs designed for senior populations. Compl. ¶¶ 12–13; *see also* Mar. 6, 2017 Form 10-K at 4 (Compl. ¶ 57) (Ex. A). One of its signature programs is called SilverSneakers, which Tivity offers to members of Medicare Advantage, Medicare Supplement, and Group Retiree plans. Compl. ¶¶ 13, 25; *see also* Mar. 6, 2017 Form 10-K at 4 (Compl. ¶ 57) (Ex. A). Under this program, Tivity forms direct relationships with thousands of fitness centers nationwide and then sells program benefits, such as fitness center access and fitness classes, to its customers. Compl.

¶¶ 31–32.  Some of these customers include health plans, like Humana, Inc. and UHC, who pay Tivity a fee and then, in turn, offer SilverSneakers benefits to their own policyholders as part of their insurance coverage.  *Id.*

The Complaint arises out of UHC's decision to offer a program that would try to compete against SilverSneakers.  In January 2017, UHC rolled out its competing program called Optum Fitness Advantage ("Optum") in Washington and New Jersey.  Compl. ¶ 65.  On November 6, 2017, UHC announced that it would offer Optum in nine additional states beginning in 2018. Compl. ¶ 81.  As alleged in the Complaint, Tivity management acknowledged that it had been aware of UHC's competition since June 2017.  Compl. ¶ 85.

What the documents incorporated into the Complaint by reference make clear, however, is that the Optum program had no material impact whatsoever on Tivity.[3]  Even though UHC offered its own Optum program in two states with plans to offer it in nine additional states, ***UHC continued to offer the SilverSneakers Fitness Program for their Group Medicare Advantage members in all 50 states***.  *See* Nov. 6, 2017 Press Release (Compl. ¶ 84) (Ex. B).

Moreover, both the SilverSneakers program and Tivity's revenues continued to thrive throughout the alleged class period.  Tivity's eligible SilverSneakers members actually increased from 13.5 million at the end of 2016 to 14.8 million at the end of the third quarter of 2017.  *See* Oct. 26, 2017 Analyst Call Transcript (Compl. ¶ 75) (Ex. C).  Tivity's revenues increased from $500 million in 2016 to $556 million in 2017.  *See* Feb. 28, 2018 Form 10-K at 18 (Compl. ¶ 87) (Ex. D).  Not only did the revenues increase, but Tivity performed exactly how it told its investors it would perform.  Specifically, Tivity's revenues of $556 million in 2017 met all of the forecasted amounts it provided to investors throughout the alleged class period.  *Id.*; Apr. 27,

---

[3]  "[C]ourts must consider … sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

2017 Press Release (Compl. ¶ 60) (revenue forecast of $550 million to $558 million) (Ex. E).

Despite Tivity's successful performance during the alleged class period, Tivity's stock price declined on November 6, 2017, the day that UHC announced it would be offering its Optum program in nine additional states. Compl. ¶¶ 80-83. Just two weeks later, on November 20, 2017, this lawsuit was initiated with the allegation that Tivity should have disclosed prior to November 2017 that UHC had launched its Optum program and that it was directly competing with Tivity. As explained below, the Complaint fails to state a viable claim because Tivity had no obligation to disclose a fact that had no material impact on the Company. And, even if there was somehow a duty to disclose, the Complaint wholly fails to allege that any Defendant acted with the requisite intent to defraud.

## III.    APPLICABLE STANDARD

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted. When such a motion is filed, a complaint can only survive dismissal if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on a motion to dismiss, the Court "need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation and citations omitted).

Here, the Complaint attempts to allege a claim under § 10(b) of the Exchange Act and Rule 10b-5. "[T]o state a claim under Section 10(b) of the [Exchange Act], or under SEC Rule 10b–5, a plaintiff must allege: (1) a misrepresentation or omission; (2) of a material fact that the defendant had a duty to disclose; (3) made with scienter; (4) justifiably relied on by plaintiffs;

and (5) proximately causing them injury." *Ley v. Visteon*, 543 F.3d 801, 806 (6th Cir. 2008), *abrogated on other grounds, Doshi v. Gen. Cable Corp.*, 823 F.3d 1032 (6th Cir. 2016). The failure to plead any one of the elements of a § 10(b) claim is sufficient grounds for dismissal. *See Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 584 (E.D. Mich. 2016) (dismissing complaint because "plaintiff cannot satisfy the first element of his § 10(b) and Rule 10b-5 claim").

Ordinarily, civil complaints need only satisfy the pleading standard set forth in Rule 8, but because the Complaint in this case alleges claims of securities fraud under §§ 10(b) and 20(a) of the Exchange Act, it is subject to the higher pleading burdens of Rule 9(b) and the Reform Act, 15 U.S.C. § 15u-4, *et seq.* *See Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 488–89 (6th Cir. 2015).

Securities litigation has for many years been especially prone to "strike suits" aimed at "jackpot discovery and predatory settlement." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 547 (6th Cir. 2001). Such abusive lawsuits are often "based on nothing more than a company's announcement of bad news, not evidence of fraud." S. Rep. No. 104-98, at 4 (1995), as reprinted in 1995 U.S.C.C.A.N. 679, 683. Thus, in 1995, Congress enacted the Reform Act and designated district courts as gatekeepers to prevent actions that do not meet the heightened pleading requirements from proceeding to discovery and beyond. *Tellabs*, 551 U.S. at 320; *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 713 (E.D. Va. 2003).

The Sixth Circuit has described the Reform Act's heightened pleading standards as an "***elephant-sized boulder blocking [plaintiff's] suit***." *Omnicare*, 769 F.3d at 461 (emphasis added). And, given the difficulty of meeting the pleading burden, it should come as no surprise that the Sixth Circuit routinely affirms district court dismissals of complaints of this type. *See,*

*e.g., Omnicare,* 769 F.3d at 484*; Bondali,* 620 F. App'x at 493; *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 445 (6th Cir. 2014); *Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495, 502 (6th Cir. 2013); *Darby v. Century Bus. Servs., Inc.*, 96 F. App'x 277, 287 (6th Cir. 2004); *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 692 (6th Cir. 2003); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 554 (6th Cir. 1999).

Under the Reform Act, the Complaint must "(1) . . . specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . and (2) . . . state with particularity facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1)–(2) (emphasis added). If either of these requirements is not met, the court "***shall***, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

Here, the Complaint should be dismissed with prejudice because it fails to plead either an actionable misstatement or omission, *see infra* at § IV(A) or a strong inference of scienter, *see infra* at § IV(B), in accordance with the Reform Act's heightened pleading requirements.

## IV.     ARGUMENT AND CITATION OF AUTHORITIES

### A.     The Complaint Should be Dismissed Because it Fails to Plead Any Actionable Misstatement or Omission.

The Complaint alleges that the following three categories of statements are somehow actionable under the securities laws because Defendants failed to disclose UHC's competing Optum program: (1) risk disclosures in the Company's SEC filings, (2) Tivity's variously stated expectations of future performance, and (3) Mr. Tramuto's statements regarding the UHC contract renewal. As explained below, the failure to disclose UHC's competing Optum program fails to state a claim because the Complaint does not, and cannot, allege that it is a material fact. Even if it were a material fact, the alleged statements still would not be actionable because (1)

the Sixth Circuit holds that risk disclosures are not actionable misstatements, (2) the statements of future performance are immunized from liability by the Reform Act's Safe Harbor protection, and (3) the Complaint fails to allege that Mr. Tramuto's statements regarding the UHC contract renewal were somehow false.

### 1.    All of the Alleged Statements Should Be Dismissed Because the Complaint Fails to Allege Materiality.

All of the Complaint's claims are based on the alleged failure to disclose UHC's competing Optum program.  "Silence, absent a duty to disclose, is not misleading under Rule 10b-5."  *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).  The law is clear that disclosure could be required only to the extent that the allegedly omitted information is "material."  *See Rubin v. Schottenstein*, 143 F.3d 263, 267 (6th Cir. 1998).  As explained below, the Complaint fails to allege that UHC's competing Optum program was material to Tivity's bottom line, and, thus, as the Sixth Circuit holds, the Complaint fails to state a claim and should be dismissed. Three cases are particularly instructive.

First, in *Pension Fund Group v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237 (6th Cir. 2015), the complaint alleged a similar theory to the one at issue here, namely, that "Tempur-Pedic misled investors by issuing rosy financial projections and failing to disclose the company's deteriorating competitive position."  *Id.* at 240.  The Sixth Circuit affirmed dismissal, holding that "Tempur-Pedic was not required to disclose its internal analyses of how a specific competitor affected sales."  *Id.* at 244.  In particular, Tempur-Pedic's disclosures were not "inadequate merely because the company's growth appeared to slow—but not reverse—due to competition in 2011."  *Id.* at 244.

The Sixth Circuit reached a similar result in *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008).  In *Zaluski*, the complaint alleged defendants should have

disclosed that they made illegal payments to a consultant because those illegal payments put the company's primary contract at risk. *Id.* at 571. The Sixth Circuit, however, held this theory failed to state a claim because there was no duty to disclose information that might put a contract at risk when the complaint is devoid of allegations ***that the company thought the payment put the contract at risk or otherwise would have a negative impact***. *Id.* at 575.

Finally, in *Bondali*, 620 F. App'x 483, the complaint attempted to state a claim based on an alleged failure to disclose that two of the company's chicken suppliers sold chicken that tested positive for drug and antibiotic residues. *Id.* at 491. The Sixth Circuit affirmed dismissal because "plaintiffs have not alleged facts suggesting the issues with [the suppliers] were so severe that they would have resulted in financial loss for [the company]." *Id.*

In sum, these three Sixth Circuit cases stand for the proposition that a plaintiff must allege a "financial loss" or impact to the "bottom line" to sustain a failure-to-disclose theory. *Bondali*, 620 F. App'x at 491; *Tempur-Pedic*, 614 F. App'x at 245; *see also Janbay v. Canadian Solar, Inc.*, No. 10-4430, 2012 WL 1080306, *6 (S.D.N.Y. Mar. 30, 2012) (the complaint must allege facts to "place the purported value of [the undisclosed fact] within the context of [the company]'s total financial picture"); *In re Nokia OYJ (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 408 (S.D.N.Y. 2006) (dismissing securities fraud claims because complaint "fails, and does not even attempt, to approximate the magnitude or degree of the alleged misstatements in relation to [company]'s total financial picture"); *Gavish v. Revlon, Inc.*, No. 00-7291, 2004 WL 2210269, at *16 (S.D.N.Y. Sept. 30, 2004) (holding that "plaintiffs' conclusory allegations of materiality cannot withstand a motion to dismiss" because "[n]one of the complaint's allegations of improper sales practices contain a specific allegation of monetary consequence at all, let alone one large enough to have been reflected in [company]'s financial statements").

The Complaint here wholly fails to meet this standard. It does not allege any facts from which to infer that UHC's competing Optum program had any impact, much less a material impact, on Tivity's business or sales. The Complaint simply alleges that UHC stopped offering SilverSneakers to certain policyholders in Washington and New Jersey and began offering its own program in those two states. *See* Compl. ¶ 49. This deficient allegation is overstated because, as the documents incorporated into the Complaint reveal, UHC did not stop offering SilverSneakers to all of its policy holders in those states. Rather, it only stopped offering Tivity's program to Individual Medicare Advantage Members in Washington and New Jersey, while Tivity "continue[d] to offer the SilverSneakers Fitness Program for their Group Medicare Advantage members in all 50 states." Nov. 6, 2017 Press Release (Ex. B).

Moreover, the Complaint does not allege that either Washington or New Jersey was particularly meaningful to Tivity's business as a whole nor does the Complaint suggest that the Optum program operating in those two states caused Tivity to lose any significant number of members or otherwise result in the loss of any amount of revenue. Indeed, the documents incorporated into the Complaint by reference demonstrate the exact opposite – both SilverSneakers' membership and Tivity's revenues increased during the alleged class period.

Because the Complaint does not allege that UHC's Optum program had any material impact on Tivity's business or revenue, the Complaint fails to allege that Tivity had any duty to disclose this information. All of Plaintiff's claims must therefore be dismissed for failure to allege any material omission that Tivity was required to disclose. *Bondali*, 620 F. App'x at 491 (dismissing § 10(b) claim where plaintiff failed to allege that the food contamination issues omitted from defendant's SEC filings "were so severe that they would have resulted in financial loss for Yum"); *Zaluski*, 527 F.3d at 574 (holding that defendant had no duty to disclose certain

allegedly illegal payments because "there is no evidence that [defendant] anticipated that the []

payments would lead to a termination or modification of its contract with TennCare").

### 2. The Risk Disclosure Statements Should Be Dismissed Because They Are Not Actionable as a Matter of Law.

The Complaint's attempt to allege a claim for purportedly misleading risk disclosures

should be dismissed because risk disclosures are simply not actionable in the Sixth Circuit.

The risk disclosures that the Complaint challenges are the Company's warning that

revenues were subject to risk because (1) "health plan customers could attempt to offer services

themselves that compete directly with [Tivity's] offerings or stop providing [its] offerings to

their members," and (2) that the "loss or restructuring of a contract with Humana, [UHC] or [its]

other significant customers could have a material adverse effect on [Tivity's] business and

results of operations."  Compl. ¶¶ 57–58.[4]  Notably, the Complaint alleges these risk disclosures

are actionable because they did not include information "concerning UHC's rollout of its

competitive program," which allegedly "led the investing public to believe that competition from

important health plan customers, like UHC, and the concomitant impact on revenues remained a

mere possibility, when actual competition from UHC had definitively begun."  Compl. ¶ 59.

The Sixth Circuit has unambiguously and definitively foreclosed this risk-disclosure

allegation.  As the Sixth Circuit has held, "cautionary statements are 'not actionable to the extent

plaintiffs contend defendants should have disclosed risk factors 'are' affecting financial results

rather than 'may' affect financial results.'" *Bondali*, 620 F. App'x at 491 (quoting *In re FBR Inc.*

*Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008)).  That is the exact allegation the

Complaint makes here, and *Bondali* requires its dismissal.  *See id.* (dismissing claims based on

---

[4]  The Complaint also alleges that the Company's later affirmation of these risk disclosures is actionable.  Compl. ¶¶ 68, 72, 78.  These alleged statements are subject to dismissal for the same reason as the substantive risk disclosures.

statement in risk disclosure that allegedly misled investors into believing that "it was only *possible* for food safety issues to harm investment in Yum when, in fact, food safety issues had already come to pass and were presently harming investment in Yum." (emphasis in original)).

### 3. The Forward-Looking Statements Should Be Dismissed Pursuant to the Reform Act's Safe Harbor Provision.

The Complaint also attempts to assert liability based on Tivity's statements of future performance. These statements cannot form the basis for a securities complaint because they are protected under the Reform Act's Safe Harbor provision. In 1995, when Congress enacted the Reform Act, it inserted a legal safe harbor into the statutory regime because it recognized that a "company's own assessment of its future potential [is] among the most valuable information shareholders and potential investors could have about a firm." *See* S. Rep. No. 104-98, at 15–16 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 694–95. By providing a Safe Harbor provision, Congress intended to quell corporate management's "[f]ear that inaccurate projections [would] trigger the filing of a securities fraud lawsuit." *Id.*, 1995 U.S.C.C.A.N. 679, at 695.

Under its terms, the Safe Harbor provides that "in any private action . . . that is based on an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading, [the defendant] ***shall not be liable*** with respect to ***any*** forward-looking statement . . . [that] is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i) (emphasis added). Thus, "if the statement qualifies as 'forward-looking' and is accompanied by sufficient cautionary language, a defendant's statement is protected ***regardless of the [defendant's] actual state of mind***." *Miller*, 346 F.3d at 672. (emphasis added).

Here, the Complaint attempts to premise liability on the following three forward-looking

statements relaying the Company's plans and objectives for future operations and the Company's future financial expectations:

- "Through our A-B-C-D strategy, the goals of which are to . . . , we believe we are well positioned to strengthen our market leadership position in serving the age 50-plus market." Compl. ¶ 60.

- "[W]e believe we have a tremendous long-term opportunity to increase participation in both our SilverSneakers® and Prime® programs within each program's existing base of millions of members who are already eligible to enroll and participate." Compl. ¶ 70.

- "We expect 2018 to benefit from improved performance across our functional areas. For example, we achieved a contract renewal rate of over 99% for 2018." Compl. ¶ 76.

All of these statements are, by definition, "forward looking" under the Reform Act because they reflect either "plans and objectives of management for future operations" or "future economic performance." 15 U.S.C. § 78u-5(i)(1)(B)–(C). And, because these statements are forward-looking, they are subject to protection under the Reform Act's Safe Harbor provision so as long as they were accompanied by meaningful cautionary language. To be "meaningful," "'cautionary statements must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements.'" *Helwig*, 251 F.3d at 558–559 (internal citations omitted); 15 U.S.C. § 78u-5(c)(1)(A)(i)).

Although these statements should be "substantive and tailored to the specific future projections, estimates, or opinions . . . which the plaintiffs challenge," *Helwig*, 251 F.3d at 559 (citation omitted), the Reform Act does not require companies to warn of "the particular factor that ultimately causes the forward-looking statement not to come true." *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999). Moreover, a company "is not required to detail every facet or extent of [a] risk to have adequately disclosed the nature of the risk." *Miller*, 346 F.3d at 678. "'In short, when an investor has been warned of risks of a significance similar to that actually

realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward.'" *Helwig*, 251 F.3d at 559 (quoting *Harris*, 182 F.3d at 807).

Here, each forward-looking statement described above was accompanied by meaningful cautionary language. In each case, the Company referred investors to the risk disclosures made in the Company's 2016 Form 10-K, which cautioned investors about the specific risks about which Plaintiff complains—revenue losses due to competitive activities of health plan customers and the loss or restructuring of health plan customer contracts. *See* Apr. 27, 2017 Press Release at 5 (Ex. E); Jul. 27, 2017 Press Release at 5 (Ex. F); Oct. 26, 2017 Earnings Call Tr. at 2 (Ex. C); Tivity 2016 Form 10-K at 8 (Ex. A). The Company also cautioned investors in each case that forward-looking statements may be "affected by certain risks and uncertainties," including:

- "the Company's ability to renew and/or maintain contracts with its customers under existing terms or restructure these contracts on terms that would not have a material negative impact on the Company's results of operations";

- "the Company's ability and/or the ability of its customers to enroll participants and to accurately forecast their level of enrollment and participation in the Company's programs in a manner and within the timeframe anticipated by the Company;"

- "the risks associated with deriving a significant concentration of revenues from a limited number of customers;"

- "the Company's ability to effectively compete against other entities, whose financial, research, staffing, and marketing resources may exceed the Company's resources."

Apr. 27, 2017 Press Release at 3–4 (Ex. E); Jul. 27, 2017 Press Release at 4 (Ex. F); Oct. 26, 2017 Press Release at 4 (Ex. G).[5] These statements, along with those in the Company's 2016 annual report, considered either individually or together, were certainly sufficient to warn investors about the risks posed to revenue by potential actions taken by health plan customers.

---

[5] In the Company's third-quarter earnings call, the Company incorporated by reference all cautionary statements made in its October 26, 2017 press release. Oct. 26, 2017 Earnings Call Tr. at 2 (Ex. C).

Thus, the claims based on forward-looking statements alleged in the Complaint should be dismissed because they were accompanied by meaningful cautionary language.

### 4. The Statements Regarding the Contract Renewal Should Be Dismissed Because the Complaint Fails to Allege Falsity.

The final statements on which the Complaint attempts to base a claim are the following statements regarding the contract renewal with UHC that Mr. Tramuto made on April 27, 2017:

- "This improved depth of understanding led to a renewal that was completed on favorable terms." Compl. ¶ 63.

- "As we noted in my script is that we renewed on favorable terms, we don't get into the specifics. … And we are very pleased with the terms that we have." Comp. ¶ 64.

- "No. And, as I shared, it's favorable terms." Compl. ¶ 66.

"When an alleged misrepresentation concerns 'hard information' – 'typically historical information or other factual information that is objectively verifiable" – it is actionable if a plaintiff pleads facts showing that the statement concerned a material fact and that it was objectively false or misleading." *Omnicare*, 769 F.3d at 470.

The Complaint is completely devoid of any facts demonstrating that the UHC contract renewal was not on favorable terms. The Complaint's failure to allege any facts demonstrating the objective falsity of the statements regarding the new UHC contract requires dismissal of these statements from the Complaint. *Id.*

### B. The Complaint Should be Dismissed Because it Fails to Allege Facts Sufficient to Give Rise to a Strong Inference of Scienter.

The Complaint should be dismissed for the additional and independent reason that it fails to allege any facts sufficient to give rise to a strong inference that any Defendant made any alleged misstatement with the requisite scienter.

Even if the Complaint alleged that Defendants uttered some material misstatement or omission—which it does not—this alone is not enough. To survive dismissal, the Reform Act

requires that "the complaint shall, with respect to each act or omission alleged . . . , *state with particularity facts giving rise to a strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). As the Supreme Court held, the Reform Act's "'strong inference' standard 'unequivocally raise[d] the bar for pleading scienter." *Tellabs*, 551 U.S. at 321–22 (internal quotation omitted). *Tellabs* sets forth the proper standard for assessing whether a strong inference of scienter has been pled. "To qualify as 'strong' . . . , an inference of scienter must be more than merely plausible or reasonable – *it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent*." *Id.* at 309 (emphasis added). This inquiry is "inherently comparative," meaning that a court "must consider, not only inferences urged by the plaintiff . . . , but also competing inferences rationally drawn from the facts alleged" as well as "plausible nonculpable explanations for the defendant's conduct." *Id.* at 314, 324. And any "omissions and ambiguities [in the plaintiffs' allegations] count against inferring scienter." *Id.* at 326. "Pleadings that fail to meet this standard 'shall' be dismissed." *Doshi*, 823 F.3d at 1039 (quoting 15 U.S.C. § 78u-4(b)(3)(A)).

In considering whether the facts alleged give rise to a strong inference of scienter, courts in the Sixth Circuit look both to (a) "the complaint's allegations 'holistically'" (*Ricker*, 534 F. App'x at 499); and (b) the nine factors set forth in *Helwig*, 251 F.3d 540. As explained below, under either standard, the Complaint fails to allege a strong inference of scienter. And, even if it did, any inference of scienter is not as compelling as the opposing, innocent inference that must be drawn from the facts alleged.

### 1. The Complaint's Allegations Viewed Holistically Fail to Allege a Strong Inference of Scienter.

The Complaint attempts to plead the requisite strong inference of scienter with allegations that Defendants must have known about UHC's Optum program because of the importance of the Company's relationship with UHC, the purported open-enrollment notification

about Optum operating in New Jersey and Washington, the purported "aggressive" letter about UHC's activities[6], and the alleged statement that Tivity knew about UHC's plans as of June 2017. At best, these allegations give rise to an inference that Defendants knew about UHC's Optum program. But knowledge of the Optum program does not equate to an inference that Defendants acted with the requisite "bad intent." *May v. Apricus Biosciences, Inc.*, No. 3:13-cv-00554, 2014 WL 4897938, at *8 (M.D. Tenn. Sept. 20, 2014). To meet this standard, the Complaint "must separately plead facts with particularity, showing that a defendant knew or recklessly ignored that its statements were false or misleading at the time they were made." *Id.*

There are no facts alleged from which the Court could infer that any of the Defendants knew or recklessly ignored that any of the alleged statements at issue were false or misleading at the time they were made. Indeed, the more compelling inferences available from the facts alleged is that the Defendants, once they did become aware of UHC's Optum program, did not believe that UHC's actions had materially impacted the Company's business or operations such that this information must be disclosed.

UHC initially rolled out its competitive program in only two states of the fifty states in which UHC and Tivity contractually operated. *See* Compl. ¶ 65. And, even in those two states, UHC continued to offer Tivity's SilverSneakers program to at least its Group Medicare Advantage members. *See* Compl. ¶ 84. The Complaint does not allege that the Optum program caused or threatened to cause Tivity to lose a significant number of members or even that it had any impact on Tivity's revenues. Nor could it. The documents incorporated into the Complaint

---

[6] The allegations regarding the "aggressive" letter purportedly come from Plaintiff's Confidential Witness. Compl. ¶¶ 46-54. The Complaint fails to allege any contact between the Confidential Witness and any of the Individual Defendants, and, thus, the confidential witness allegations fail to meet the Reform Act's pleading burden. *See Ley*, 543 F.3d at 811. In any event, even if the allegations did pass muster, they would, at best, allow an inference that Defendants knew about the UHC Optum program, but not that Defendants made any statements with an intent to defraud.

by reference demonstrate that membership in the SilverSneakers program increased during the alleged class period and Tivity's revenues increased during the alleged class period. *See supra* at § II.

The only compelling inference to be drawn from these facts is that Defendants believed that UHC's actions were having little or no effect on Tivity's business or operations and that, therefore, Defendants had no duty to disclose it. Where the facts alleged support the innocent inference that Defendants did not believe there was a duty to disclose the immaterial information, scienter is lacking and the complaint should be dismissed. *See Minneapolis Firefighters' Relief Ass'n. v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1030 (8th Cir. 2011) ("We do not believe the inference of scienter is as compelling as the more innocent, simpler inference that the defendants did not believe they had a continuing duty to disclose information or, as Gareeb stated at the time, MEMC 'didn't think [the information] was material.'"); *Kalnit v. Eichler*, 264 F.3d 131, 142–43 (2d Cir. 2001) (holding that plaintiff "failed to allege scienter adequately" where the company's "duty to disclose [a particular] letter was not so clear" and therefore "defendants' recklessness cannot be inferred from the failure to disclose"); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 587–88 (S.D.N.Y. 2013) (more compelling conclusion was that defendants did not think there was a need for public disclosure); *Johnson v. Pozen Inc.*, No. 07-599, 2009 WL 426235, at *22 (M.D.N.C. Feb. 19, 2009) (dismissing claim based on non-disclosure of a particular non-favorable drug test result because "[p]laintiffs ha[d] not established a strong inference of scienter" when "[i]t [was] more compelling" to "infer that [d]efendants did not more specifically discuss the [] tests because they did not consider them to be impediments to [FDA] approval"); *Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F. Supp. 2d 628, 641 (N.D. Tex. 1999) ("Plaintiffs also fail to plead

specifically the facts necessary to establish that it was severely reckless for the individual defendants to conceal [certain information] that plaintiffs have not yet established, based on specifically-asserted facts, was material to [the company]'s total financial picture").

Because (a) the Complaint, at best, only alleges facts to infer Defendants' knowledge of the existence of the UHC Optum program, (b) there are no facts alleged to give rise to any inference that Defendants knew or recklessly ignored that their statements were false or misleading, and (c) the only compelling inference to be drawn from the facts alleged is the innocent inference that Defendants did not believe they had a duty to disclose immaterial information, the Complaint when viewed holistically should be dismissed.

### 2.    The Complaint Fails to Plead the *Helwig* Factors.

Not only does the Complaint fail to plead a strong inference of scienter when the allegations are viewed holistically, but it also fails to plead scienter when the allegations are considered in light of the nine factors that the Sixth Circuit enumerated in *Helwig* as being "usually relevant to scienter."  *Helwig,* 251 F.3d at 552.  These factors are as follows:

> (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Id.*  "The more of these factors that are present, the stronger the inference that the defendant made his statement with the requisite state of mind."  *Omnicare*, 769 F.3d at 473.  On the other

hand, even though "the *Helwig* factors are non-exhaustive . . . the absence of these factors indicates the absence of scienter." *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 900 (N.D. Ohio 2006) (emphasis added).

Of the nine *Helwig* factors, the Complaint attempts to plead only one factor regarding insider trades. But this single allegation fails to allege scienter for at least three reasons.

First, despite having named three Individual Defendants, the Complaint alleges that only **one** of those Defendants sold Company stock during the alleged class period. The Complaint contains no allegations that either Mr. Tramuto **or** Mr. Holland sold **any** Company stock during that time. "The fact that other defendants did not sell their shares during the relevant class period undermines plaintiffs' claim that defendants delayed notifying the public 'so that they could sell their stock at a huge profit.'" *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995). Thus, "[c]ourts have found that where some defendants did not profit from the alleged fraud, any inference of scienter is negated as to all the defendants." *In re Humphrey Hospitality Trust, Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 686 (D. Md. 2002).

Second, as to the one Individual Defendant that is alleged to have sold stock, Mr. Hargreaves, it is important to emphasize that the **only** *Helwig* factor alleged is a sale of stock. In the Sixth Circuit, a complaint may not plead a strong inference of scienter "by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud." *Bondali*, 620 F. App'x at 492. All that has been alleged with respect to Mr. Hargreaves is a sale of stock and that is plainly insufficient in the Sixth Circuit to survive a motion to dismiss.

Finally, tacitly acknowledging that their scienter allegations as to the named Defendants fail, the Complaint attempts to bolster its otherwise absent scienter allegations by alleging insider sales by two **non-defendants**. Compl. ¶¶ 92–95. But neither of these individuals is alleged to

have had any involvement in any fraudulent scheme or even to have been aware of it. Courts largely agree that sales by insiders other than named defendants are either entirely irrelevant to the scienter analysis or add only very little to the creation of a "strong inference" of scienter. *See e.g., Campbell v. Lexmark Int'l Inc*., 234 F. Supp. 2d 680, 685 (E.D. Ky. 2002) ("Even assuming that such sales [by non-defendant insiders] are relevant at all—and, for the record, the Court thinks they are not—such 'evidence' contributes little towards the creation of a 'strong inference.'"); *In re PetSmart, Inc., Sec. Litig.*, 61 F. Supp. 2d 982, 1001 (D. Ariz. 1999) ("[w]ithout specific facts suggesting that defendants intended their manipulation of [the company] stock to assist these specific colleagues, we find no reason to consider these transactions"); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 834 (C.D. Cal. 1998) (finding the stock sales of insiders not named as defendants "irrelevant to alleging scienter against the five named Defendants").

In short, the Complaint's attempt to plead scienter with allegations relating to only one *Helwig* factor fall far short of pleading the requisite "powerful or cogent" inference of scienter. *Omnicare*, 769 F.3d at 473. The Complaint therefore should be dismissed.

## C. The Section 20(a) Claim Should Be Dismissed.

The Complaint's claim under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), requires that the Complaint state a claim for a violation of § 10(b) or Rule 10b-5. *See Comshare*, 183 F.3d at 554 n.11. Because the Complaint fails to allege adequately a primary violation of § 10(b) or Rule 10b-5, the claim for controlling person liability under § 20(a) must also be dismissed. *Id.*; *see also Bondali*, 620 F. App'x at 493 (dismissal of § 10(b) violation required dismissal of § 20(a) claim as well).

## V. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that their Motion to Dismiss be granted and that the Complaint be dismissed with prejudice.

Respectfully submitted this 3rd day of August, 2018.

*/s/ Wallace W. Dietz*
Wallace W. Dietz (BPR # 009949)
Joseph B. Crace, Jr. (BPR # 027753)
BASS, BERRY & SIMS PLC
150 Third Avenue, South, Suite 2800
Nashville, TN 37201
Tel. (615) 742-6200
wdietz@bassberry.com
jcrace@bassberry.com

Jessica P. Corley (admitted *pro hac vice*)
Lisa R. Bugni (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Tel. (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

       I hereby certify that on this 3rd day of August 2018, I electronically filed the following document with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Eduard Korsinsky
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, NY 10004
(212) 363-7500
ek@zlk.com

James A. Holifield, Jr.
HOLIFIELD JANICH RACHAL FERRERA, PLLC
11907 Kingston Pike, Suite 201
Knoxville, TN 37934
(865) 566-0115
aholifield@holifieldlaw.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel. (615) 254-8801
gerards@bsjfirm.com
bgastel@bjsfirm.com

Steven J. Toll
Times Wang
Elizabeth Aniskevich
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue N.W., Suite 500
Washington, D.C. 20005
Tel. (202) 408-4600
stoll@cohenmilstein.com
twang@cohenmilstein.com
eaniskevich@cohenmilstein.com

Christina D. Saler
Cohen Milstein Sellers & Toll PLLC
Three Logan Square
1717 Arch Street
Suite 3610
Philadelphia, PA 19103
(267) 479-5700
csaler@cohenmilstein.com

*/s/ Wallace W. Dietz*