IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ERIC WEINER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TIVITY HEALTH, INC., *et al.*, <br><br> Defendants. | CIVIL ACTION NO.: 3:17-cv-01469 <br><br> Chief Judge Crenshaw <br> Magistrate Judge Newbern |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## I. PLAINTIFF PLEADS NO ACTIONABLE MISSTATEMENTS OR OMISSIONS.

### A. Plaintiff Fails to Allege Any Material Omission Requiring Disclosure.

As Defendants argued in their opening brief, Plaintiff has not adequately alleged a duty to disclose UHC's[1] competing program because the Complaint (a) fails to establish that it had any material impact on Tivity's business or revenue and (b) could never allege such facts given Tivity's year over year increase in revenue and the year over year increase in membership in Tivity's SilverSneakers program. Defs.' Mem. at 10. Plaintiff first argues in response that "[t]here is no support for [Defendants'] proposition" of law. Pl.'s Opp'n at 12. This is, of course, demonstrably false. Defendants cited numerous cases, both in this Circuit and elsewhere, where a plaintiff's failure to allege significant financial loss or contextualize an undisclosed fact within a company's overall financial picture proved fatal to the plaintiff's complaint. *See* Defs.' Mem. at 8–9 (collecting cases). In contrast, Plaintiff does not cite a single case where a court has sustained a complaint that failed to either (a) allege that an undisclosed fact had or threatened a significant impact on the business or (b) contextualize it within the business's finances.

For his argument, Plaintiff erroneously suggests that the three Sixth Circuit cases Defendants cite in their opening brief do not require dismissal because "the portions relied on are not about materiality." Pl.'s Opp'n at 13. But what Plaintiff fails to appreciate is that each of these cases turns on and illuminates the extent of the duty to disclose omitted facts—the very issue that requires dismissal here. In each of those cases, the Sixth Circuit held that there was no duty to disclose facts that had not been alleged to have significantly impacted a company's financial position or otherwise threatened such an impact. *See* Defs.' Mem. at 8–9. Thus, these cases are on point with the case at bar and mandate dismissal of Plaintiff's claims.

---

[1] Capitalized terms shall have the same meaning as in the Motion to Dismiss. Dkt. No. 39.

Because Plaintiff cannot point to any allegations concerning the impact that UHC's competing program might have had on Tivity's business, Plaintiff seeks to circumvent this fatal defect by highlighting a handful of other allegations that he contends demonstrate materiality and establish a duty to disclose. Ultimately, however, Plaintiff still comes up short.

First, he contends that the decline in Tivity's stock price after UHC's announcement "alone demonstrates materiality." Pl.'s Opp'n at 10–11. This contention, however, has been roundly rejected by many courts. *See e.g., U.S. v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991) ("whether a public company's stock price moves up or down or stays the same . . . does not establish the materiality of statements made"); *Geiger v. Solomon-Page Grp., Ltd.*, 933 F. Supp. 1180, 1188 (S.D.N.Y. 1996) ("The stock price may have fallen for many reasons . . . [and] even accepting as true the plaintiff's allegations about the reaction in the market to the publication of the omitted fact, that evidence is not sufficient by itself to demonstrate the materiality of the omission from the prospectus in light of the plain unimportance of that specific information"*); Milano v. Perot Sys. Corp.*, No. 02-1269, 2006 WL 929325, at *5 (N.D. Tex. Mar. 31, 2006) ("the Fifth Circuit has never held that a drop in stock price necessarily reflects the significance that a reasonable investor would have attached to the information, thereby making the decline in price sufficient of itself to demonstrate materiality"). Indeed, even significant drops in stock price cannot transform an immaterial statement or omission into a material one. *See Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546–47 (8th Cir. 1997) (holding statement immaterial despite 50% drop in stock price); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 715 (3d Cir. 1996) (statement immaterial despite 60% drop in stock price).

Next, Plaintiff suggests that UHC's launch of the Optum program might someday result in large reductions in revenue. Pl.'s Opp'n at 11, 14. Plaintiff invites the Court to accept this

pessimistic conjecture based purely on UHC's relative importance as a client, even though he makes no effort to demonstrate the actual effect that the Optum program had on Tivity's business. Courts rightly recognize, however, that customer actions are not material simply because they were taken by notable clients, but, rather, the actions must be put in context to be material. *See In re Anadigics, Inc., Sec. Litig.*, No. 08-5572, 2011 WL 4594845, at *20 (D.N.J. Sept. 30, 2011) (finding no duty to disclose fact that "Company's key wireless handset customers were dual sourcing" from competitors and holding that this fact was "immaterial in any event"). Thus, the alleged importance of UHC as a client does not suffice to stave off dismissal.

Plaintiff also directs the Court to Tivity's risk disclosures, which stated that the potential for competition by health plans and contract restructuring represented material risks to the business. Pl.'s Opp'n at 11–12. According to Plaintiff, these confirm that the launch of the Optum program must have been material. *Id.* This both misrepresents Tivity's risk disclosures and presents an overly simplistic view of materiality. Tivity's risk disclosures never suggested that any and all competition by a health plan or every contract change would necessarily result in a significant impact on the business. Rather, they indicated only that, in some circumstances, those events ***could*** have such an impact. The mere fact that a potential occurrence identified in a company's risk disclosures comes to fruition in some form does not lead to the inevitable conclusion that the company must disclose that event in every instance. *See Williams v. Globus Med., Inc.*, 869 F.3d 235, 242–43 (3d Cir. 2017) (holding that, although company warned "if any of our independent distributors were to cease to do business with us, our sales could be adversely affected," it had no duty to disclose loss of independent distributor where "plaintiffs ha[d] not plead that [company] was already experiencing an adverse financial impact at the time of the risk disclosures . . . [n]or ha[d] plaintiffs sufficiently pleaded that a drop in sales was inevitable").

Case 3:17-cv-01469   Document 50   Filed 10/09/18   Page 4 of 11 PageID #: 613

3

The mention of competition by health plans and contract restructuring in the Company's risk disclosures does not render every occurrence of those events material and subject to disclosure. They are only material if specific facts are alleged to show a material impact on the Company, which the Complaint completely fails to do.

Finally, Plaintiff argues that the Optum program was material because "the Company adjusted its 2018 financial projections downward . . . as a result of UHC's plans." Pl.'s Opp'n at 11. First, this is not what Plaintiff actually alleges in his Complaint. The Complaint states only that "UHC's plans . . . [were] fully reflected within [Tivity's] preliminary 2018 financial guidance," not that the estimates were adjusted in any direction. Compl. ¶ 84. Second, even if Plaintiff did allege an adjustment of Tivity's projections—though he does not—he still does not allege that the adjustment was one that was material because there is no allegation concerning its supposed magnitude.[2]  Therefore, this argument too must fail.

### B. The Risk Disclosure Statements Are Not Actionable as a Matter of Law.

In response to Defendants' argument establishing that Tivity's risk disclosures are not actionable, Plaintiff does little more than argue that there may be some as-yet undefined circumstances in which risk disclosures may be actionable in the Sixth Circuit and then proceeds to cite non-binding cases from other jurisdictions. Pl.'s Opp'n at 15–18. Tellingly though,

---

[2] In his Opposition, Plaintiff also notes that Tivity executives recently estimated that a loss of 11 states to UHC in 2019 could adversely impact revenue between $19 million and $21 million. Pl.'s Opp'n at 11, n.11. Even if this had been alleged in the Complaint and even if one were to make the unwarranted assumption that the estimated loss of revenue in 2019 were comparable to that in 2017 or 2018, this would serve only to show that Optum's impact on Tivity was immaterial. What Plaintiff fails to mention is that Tivity generates hundreds of millions of dollars in revenue every year. In 2017, for example, Tivity reported total revenue of approximately $557 million. Thus, even comparing the estimated 2019 losses against 2017 revenues would still only show an immaterial revenue impact—approximately 3.5%. *E.g., In re Lone Pine Res., Inc.*, No. 12-4839, 2014 WL 1259653, at *4 (S.D.N.Y. Mar. 27, 2014) (holding "omission or misstatement that has an impact of less than 5% on a company's reported financial metrics is presumptively immaterial").

Plaintiff makes no attempt to distinguish his claims from the binding precedent in *Bondali*, which expressly held that "cautionary statements are 'not actionable to the extent plaintiffs contend defendants should have disclosed risk factors 'are' affecting financial results rather than 'may' affect financial results.'" *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015). This is precisely Plaintiff's theory, so the claims must be dismissed.

Confronted with indistinguishable binding authority, Plaintiff desperately reverts to arguing that Defendants "do not dispute, and thus concede, that Tivity's risk disclosures were misleading" and therefore the statements should be actionable. Pl.'s Opp'n at 16. Defendants have, of course, conceded nothing and Plaintiff's suggestion to the contrary is absurd. In any event, the entire point of the *Bondali* holding was that risk disclosures are ***incapable*** of being misleading in the way that Plaintiff suggests because "a reasonable investor would be unlikely to infer ***anything*** regarding the current state of a corporation's compliance, safety, or other operations from a statement intended to educate the investor on ***future*** harms." *Bondali*, 620 F. App'x at 491 (second emphasis in original). Accordingly, Plaintiff's attempt to conjure up nonexistent concessions about the supposedly misleading nature of Tivity's risk disclosures cannot save his claims when the Sixth Circuit has held as a matter of law that risk disclosures cannot be misleading in that way.

        **C.    The Forward-Looking Statements Are Inactionable Under the Reform Act.**

Although Plaintiff does not dispute that some of the statements he challenges are both forward-looking and accompanied by cautionary language, he argues that they are not eligible for safe-harbor protection because the cautionary language was not sufficiently "tailored" or "meaningful." Pl.'s Opp'n at 19–20. Specifically, he asserts that Tivity's risk disclosures did not change over time to reflect UHC's nascent Optum program. *Id*. The Sixth Circuit, however, has expressly rejected the notion that a statement can be "den[ied] safe-harbor protection any

time a plaintiff [] show[s] that a defendant perceived a general negative trend, even if the trend had not yet affected its bottom line." *Pension Fund Grp. v. Tempur-Pedic Int'l*, 614 F. App'x 237, 244–45 (6th Cir. 2015). Indeed, in *Tempur-Pedic*, the Sixth Circuit held that the defendant's warning that "competition by established manufacturers or new entrants into the market ***could have*** a material adverse effect on our business" represented meaningful cautionary language on the issue of competitive risk, even though the plaintiff also alleged that competition had already caused defendant's growth rate to decrease. *Id.* at 244. The Court "decline[d] to find Tempur–Pedic's risk disclosures inadequate merely because the company's growth appeared to slow—but not reverse—due to competition." *Id*. "[H]aving disclosed the risks posed by competition, Tempur–Pedic was not required to disclose its internal analyses of how a specific competitor affected sales to claim safe-harbor protection." *Id.* This rationale applies equally here. Because Plaintiff has not alleged that the initial roll-out of the Optum program materially impacted Tivity's sales or operations, Tivity was not required to specifically address it in order to retain safe-harbor protection when it had already disclosed the relevant risks. *See id*.

**D.     The Contract Renewal Statements Are Not Alleged to Be False.**

With regard to the statements concerning the "favorable terms" of UHC's renewed contract, Plaintiff argues that the statements were false or misleading because UHC's renewed contract contemplated the Optum program. Pl.'s Opp'n at 21–22. But, contrary to Plaintiff's intimations, Mr. Tramuto neither said nor implied that every single clause in the contract was favorable, that it was as favorable as prior contracts, or that there had been "no materially negative developments in the UHC relationship." What he said was that the contract was completed on "favorable terms," meaning that the ***overall*** contract was favorable. Nothing in the Complaint suggests that the contract ***as a whole*** was unfavorable. Indeed, Plaintiff alleges almost no facts about the contract at all. The only thing alleged is that one limited aspect of it—

that piece concerning individual Medicare Advantage members in a handful of states—was not desirable. But one unappealing feature concerning only a fraction of UHC's patient population does not render the entire contract unfavorable without regard for its other terms.³

Alternatively, Plaintiff argues that contract favorability is "more akin to 'information that is uncertain and not objectively verifiable" and that, under this framework, even if the contract was favorable, the statements would be actionable as misleading half-truths. Pl.'s Opp'n at 22–23. Plaintiff is still wrong. "Courts everywhere have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace—loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570–71 (6th Cir. 2004). The Sixth Circuit defines "mere puffing" or "corporate optimism" as "those 'generalized statements of optimism that are not capable of objective verification.'" *Id.* Thus, if contract "favorability" is not objectively verifiable, then the statements fall squarely within this definition of inactionable puffery. *See Hess v. Am. Physicians Capital, Inc.*, No. 04-0031, 2005 WL 459638, at *8 (W.D. Mich. Jan. 11, 2005) (holding phrase, "[w]e continue to view the market . . . as very favorable," is a "generalized statement[] of corporate optimism" and thus inactionable (ellipses in original)).

## II. PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER.

Finally, Plaintiff argues that he has alleged the requisite strong inference of scienter based

---

³ *See Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 241 (S.D.N.Y. 2015) ("Even though media reports showed that the [products] were not selling well in foreign markets . . . that fact does not contradict generally optimistic sentiments that the [products] were being 'embraced' by customers and marked a 'transition' for the company" because "[a] poor selling device may still be embraced by customers and may still mark a transition for the company," thus the statements were not "false in any sense creating liability").

on a theory of "recklessness." Pl.'s Opp'n at 24. In the securities-fraud context, "recklessness" means "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011). It is more than mere "negligence and is 'akin to conscious disregard.'" *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016) (quoting *Frank*, 646 F.3d at 959). To make this showing "courts typically require 'multiple, obvious red flags' . . . demonstrating an 'egregious refusal to see the obvious, or to investigate the doubtful.'" *Id.*

In response to Defendants establishing that the Complaint fails to meet this standard, Plaintiff simply rehashes many of the same allegations that he attempted to marshal in support of his materiality argument. These allegations fare no better with respect to scienter because, without any allegations contextualizing the Optum program within Tivity's overall financial picture, Plaintiff cannot establish an obvious duty to disclose the information, which forecloses any possible inference of recklessness. *See Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F. Supp. 2d 628, 641 (N.D. Tex. 1999) (plaintiffs "fail to plead specifically the facts necessary to establish that it was severely reckless for the individual defendants to conceal [certain information] that plaintiffs have not yet established . . . was material to [the company]'s total financial picture."); *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 (S.D.N.Y. 2006) ("a failure to disclose particular information, by itself, can only constitute recklessness if there was an obvious duty to disclose that information").

IV.   CONCLUSION[4]

For the reasons stated in Defendants' Motion to Dismiss First Amended Complaint and the additional reasons stated herein, Defendants' Motion should be granted.

---

[4] Because Plaintiff fails to allege any primary violation of the Exchange Act, his § 20(a) claim must also be dismissed. *See In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 554 (6th Cir. 1999).

Respectfully submitted this 9th day of October, 2018.

/s/ Wallace W. Dietz
Wallace W. Dietz (BPR # 009949)
Joseph B. Crace, Jr. (BPR # 027753)
BASS, BERRY & SIMS PLC
150 Third Avenue, South, Suite 2800
Nashville, TN 37201
Tel. (615) 742-6200
wdietz@bassberry.com
jcrace@bassberry.com

Jessica P. Corley (admitted *pro hac vice*)
Lisa R. Bugni (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Tel. (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2018, I electronically filed the following document with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

| | |
|---|---|
| Eduard Korsinsky<br>LEVI & KORSINSKY, LLP<br>30 Broad Street, 24th Floor<br>New York, NY 10004<br>Tel. (212) 363-7500<br>Ek@zlk.com | James A. Holifield, Jr.<br>HOLIFIELD JANICH RACHAL &<br>ASSOCIATES, PLLC<br>11907 Kingston Pike, Suite 201<br>Knoxville, TN 37934<br>(865) 566-0115<br>aholifield@holifieldlaw.com |
| J. Gerard Stranch, IV<br>Benjamin A. Gastel<br>BRANSTETTER, STRANCH &<br>JENNINGS, PLLC<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, TN 37203<br>Tel. (615) 254-8801<br>gerards@bsjfirm.com<br>beng@bjsfirm.com | Steven J. Toll<br>Times Wang<br>COHEN MILSTEIN SELLERS & TOLL PLLC<br>1100 New York Avenue, N.W.,<br>West Tower, Suite 500<br>Washington, D.C. 20005<br>Tel. (202) 408-4600<br>stoll@cohenmilstein.com<br>twang@cohenmilstein.com |
| Christina D. Saler<br>COHEN MILSTEIN SELLERS & TOLL<br>PLLC<br>Three Logan Square<br>1717 Arch Street, Suite 3610<br>Philadelphia, PA 19103<br>Tel. (267) 479-5700<br>csaler@cohenmilstein.com | |

                                              /s/ Wallace W. Dietz