UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ERIC WEINER, Individually and on )
Behalf of All Others Similarly Situated, )
 )
Plaintiff, )
 )
v. ) Case No. 3:17-cv-01469
 )
TIVITY HEALTH, INC., DONATO )
TRAMUTO, GLENN HARGREAVES )
and ADAM HOLLAND, )
 )
Defendants. )

## MEMORANDUM OPINION AND ORDER

Tivity Health, Inc. has filed a motion requesting that the Court reconsider is prior decision (Weiner v. Tivity Health, Inc., 365 F. Supp. 3d 900 (M.D. Tenn. 2019)) denying Tivity's Motion to Dismiss Eric Weiner's Amended Complaint. Two arguments are raised in the Motion for Reconsideration (Doc. No. 63), neither of which is persuasive.

First, Tivity argues that, in arriving at its decision, the Court "overlooked controlling Sixth Circuit precedent that holds the Court is not to consider a defendant's state of mind, or alleged knowledge of falsity, in determining whether the Safe Harbor immunizes the alleged forward-looking statements from liability." (Doc. No. 64 at 2). It cites as the controlling authority the Sixth Circuit's decision in Miller v. Champion Enterprises, Inc., 346 F.3d 660, 672 (6th Cir. 2003) and the undersigned's decision in Zwick Partners, LP v. Quorum Health Corp., No. 3:16:cv-02475, 2019 WL 1450546 7 (M.D. Tenn. Mar. 29, 2019), which applied similar Sixth Circuit case law.

The Court, however, did not overlook binding precedent, and certainly not Miller. To the contrary, not only was Miller cited more than once, it was quoted for the very proposition that Tivity now claims the Court ignored. Specifically, the Court wrote:

> "[F]or 'forward-looking statements' that are accompanied by meaningful cautionary language, the . . . the safe harbor provided for in the PSLRA makes the state of mind irrelevant." Miller, 346 F.3d at 672 (citing 15 U.S.C. § 78u–5(c)(1)(A)). "In other words, if the statement qualifies as 'forward-looking' and is accompanied by sufficient cautionary language, a defendant's statement is protected regardless of the actual state of mind."

Weiner, 365 F. Supp. 3d at 910 (quoting Miller, 346 F.3d at 672). This is no different than what the Court wrote eleven days later in Zwick: "if the statement qualifies as 'forward-looking' and is accompanied by sufficient cautionary language, it is protected and non-actionable in a securities fraud action regardless of the defendant's actual state of mind." 2019 WL 145046, at *3.

The Court is inundated with work, but it generally recalls what it writes from one day to the next. The holding in this case is not inconsistent with Zwick even though dismissal was partially granted in Zwick based on the safe harbor provision. There, unlike here, the cautionary statements were determined to be meaningful because they "consistently provided comprehensive and tailored warnings, which changed over time to address new risks," id. at *8, while here the statements were never updated or tailored to new risks. This, of course, is not a distinction without a difference.

In its reply brief, Tivity makes a more nuanced argument. It asserts that "Miller requires the Court to determine whether the cautionary language was meaningful on its face without considering state of mind," and that "the Court's analysis, which considered what Defendants actually knew is an analysis of state of mind." (Doc. No. 75 at 3). This supposed analysis of Tivity's state of mind is apparently based on the Court's singular statement that "Tivity allegedly *knew* UHC would expand competition in at least nine other states." Weiner, 365 F. Supp.3d at 913 (emphasis added). From this, Tivity submits that the Court's "Order holds that the Safe Harbor does not apply based upon what Defendants allegedly knew at the time." (Doc. No. 64 at 11). The Order – more precisely the accompanying Memorandum Opinion – was not so broad, and did no such thing.

2

Assuming Tivity reads Miller correctly and that knowledge equates with a state of mind, this Court's use of the word "know" could simply be chalked up to being a bad word choice. It was not. Read in context, and not divorced from what came before and after, it is clear that the Court was talking about historical facts.

The discussion began with "observations worthy of repeating in some detail," Weiner, 365 F. Supp.3d at 911, from the decision in In re Harman International Industries Securities Litigation, 791 F.3d 90, 106 (D.C. Cir. 2015). There, among other things, the District of Columbia Circuit "joined [its] sister circuits' reasoned analysis of the safe harbor requirement that forward-looking statements be accompanied by 'meaningful cautionary statements,'" and opined that "cautionary language cannot be 'meaningful' if it is 'misleading in light of historical fact[s], . . . that were established at the time the statement was made[.]" In re Harman, 791 F.3d at 103. This is hardly a controversial proposition even in the Sixth Circuit, and even in light of Miller. See, Dougherty v. Esperion Therapeutics, Inc., 905 F.3d 971, 982–83 (6th Cir. 2018) (stating that "a defendant will not be liable for a material forward-looking statement if [it] is accompanied by meaningful cautionary statements," and quoting Miller for the proposition that "the safe harbor does not extend to 'a statement of present of historical facts'"). After quoting In re Harmon, and finding that "Tivity's arguments may be valid to an extent," the Court noted that "a cautionary statement must be substantive and tailored," Weiner 365 F.3d at 912, and then discussed the allegations in the Amended Complaint. These included:

> UHC had already: (1) started operating Optum Fitness Advantage in New Jersey and Washington; and (2) sent letters to fitness centers in other states. Then, by the time of the July 27, 2017 press release, Tivity allegedly knew UHC would expand competition in at least nine other states, and formed a special committee to address the problem. And, by the time of the October 26, 2017 conference call, Tivity developed and implemented a communications plan to attempt to contain the UHC threat, informed its fitness centers not to make any statements about UHC's entry into the market, or even identify UHC as the competitor.

Id. at 912-913. The Court concluded the paragraph by stating: "given these historical facts, warnings about potential actions that might be taken in the future by health plan customers were not meaningful." Id. at 913. Neither in that passage, nor anywhere else, did the Court attempt to analyze Tivity's state of mind when discussing whether its cautionary statements were meaningful.

In short, the Court did not ignore controlling authority, nor did it merely pay lip service to Miller. While Tivity does not like the way the Court applied the law, that is not a proper basis for a Motion to Reconsider. See, Am. Marietta Corp. v. Essroc Cement Corp., 59 F. App'x 668, 672 (6th Cir. 2003) (stating that "a motion to reconsider should not be used to re-litigate issues previously considered"); Allied Waste N. Am., Inc. v. Lewis, King, Krieg & Waldrop, P.C., No. 3:13-00254, 2015 WL 13655827, at *1 (M.D. Tenn. June 2, 2015) ("[A] motion to reconsider should not be used to re-litigate issues previously considered" and "its purpose is not to offer litigants a 'second bite at the apple.'"); Ivory v. Shelby Cty. Gov't, No. 00-3022-V, 2001 WL 1906278, at *1 (W.D. Tenn. Dec. 6, 2001) (citation omitted) ("Motions to reconsider are not to be used to 'merely restyle or re-hash the initial issues' or simply to disagree with the court's findings.").

Tivity's second argument is an even less veiled attempt to relitigate a question that has already been considered and resolved. It argues that "the Complaint did not and could not allege UHC's decision to compete with Tivity Health during the alleged class period was material because during that period (a) Tivity Health's SilverSneakers program . . . actually experienced a nearly 1.3 million-member increase year-over-year and (b) Tivity Health's revenues increased by $50 million year-over-year." (Doc. No. 63 at 2). This is no different from that which was argued in Tivity's original motion: "As the documents incorporated into the Complaint by reference demonstrate, Tivity's SilverSneakers program experienced a nearly 1.3 million-member increase year over year during the alleged class period and Tivity's revenues saw a $50 million year-over-year increase during

4

the alleged class period." (Doc. No. 39 at 7). Based upon those yet-to-be proven "facts," Tivity discussed "three Sixth Circuit cases [that stood] for the proposition that a plaintiff must allege a 'financial loss' or impact to the 'bottom line'" for purposes of showing materiality. Two of those cases are again raised in its motion to reconsider.[1]

None of this is new. The Court discussed each of the three cases in detail in its prior ruling, Weiner, 365 F. Supp. 3d at 908-910, and found them distinguishable. The Court also found that, "[r]egardless of what distinctions there may be between this case and the ones relied upon by Defendants, none of those cases suggested a change in the law surrounding materiality" or "the 'total mix' standard articulated by the Supreme Court in Basic Inc. v. Levinson, 485 U.S. 224, 240 (1988)." Id. at 910. The "total mix" standard is not mentioned in Tivity's motion to reconsider, just as it went unmentioned in Tivity's opening brief.

Accordingly, Tivity's Motion for Reconsideration (Doc. No. 63) is **DENIED**, and this case is returned to Magistrate Judge Newbern for further pretrial case management.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Those case are Bondali v. YumA Brands, Inc., 620 F. App'x 483 (6th Cir. 2015); Pension Fund Group v. Tempur-Pedic International, Inc., 614 F. App'x 237 (6th Cir. 2015); and Zaluski v. United American Healthcare Corp., 527 F.3d 564 (6th Cir. 2008).