**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| ERIC WEINER, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No.: 3:17-cv-01469 |
| v. | |
| TIVITY HEALTH, INC., *et al.*, | Chief Judge Crenshaw |
| | Magistrate Judge Newbern |
| Defendants. | |

**LEAD PLAINTIFF AND CLASS REPRESENTATIVE'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS <u>ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................ 1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................. 2

III.   SUMMARY OF THE PROPOSED NOTICE PROCESS ................................. 6

IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
      WARRANTED ...................................................................................... 7

      A.     Legal Standard: Since 2018, courts have taken two slightly different
             approaches to determining whether to preliminarily approve a settlement. .......... 7

      B.     The Rule 23(e)(2) and *UAE* factors considered in connection with final
             approval support granting preliminary approval ..................................................... 10

           1.    The relevant Rule 23(e)(2) factors support preliminary approval of the
                 Settlement. ........................................................................................................ 10

                 (a)   Class Representative and Class Counsel have adequately represented the
                       Class .................................................................................................... 10

                 (b)   The proposed Settlement was negotiated at arm's length ...................... 11

                 (c)   The proposed Settlement is adequate in light of the costs, risks, and delay
                       of trial and post-trial appeal ................................................................ 12

                 (d)   The proposed method of distributing relief is effective and Class
                       Members are treated equitably ............................................................. 12

                 (e)   Attorney's fees and expense are reasonable ........................................... 14

                 (f)   Additional agreements ........................................................................... 15

            2.    The Sixth Circuit *UAW* factors are also satisfied ............................................ 15

                 (a)   The amount of discovery engaged in by the Parties supports approval of
                       the Settlement ...................................................................................... 16

                 (b)   The likelihood of success on the merits weighs in favor of approval of the
                       proposed Settlement ............................................................................. 16

                 (c)   The informed and reasoned opinions of Class Counsel and Class
                       Representative warrant approval ........................................................... 17

                 (d)   The reaction of absent Class Members is not yet available ................... 17

                 (e)   The public interest weighs in favor of approval of the Settlement.......... 17

    C.     The Settlement also satisfies the traditional preliminary-approval standard. ....... 18

V.     NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ...................... 20

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................ 23

VII.   CONCLUSION ................................................................................................................ 24

Case 3:17-cv-01469   Document 160   Filed 06/10/21   Page 3 of 47 PageID #: 8237

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bailey v. Verso Corp.*,
    337 F.R.D. 500 (S.D. Ohio 2021) ............................................................................8

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ...........................................................................18

*In re Carrier iQ, Inc., Consumer Priv. Litig.*,
    3:12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)...................15

*Connectivity Sys. Inc. v. Nat'l City Bank*,
    2:08-cv-01119-MHW, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ....................16

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................18

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981) ...................................................................................7

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) .................................................................................18

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .............12

*Hicks v. Stanley*,
    No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................14

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ......................................................................8, 17, 20

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ..........................................................................17

*Macy v. GC Servs. Ltd. P'ship.*,
    No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522 (W.D. Ky. Dec. 6, 2019) ............7, 9, 11, 16

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..................................................................................................20

*New York State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ..........................................................................16

Case 3:17-cv-01469   Document 160   Filed 06/10/21   Page 4 of 47 PageID #: 8238

*Ostendorf v. Grange Indem. Ins. Co.*,
No. 2:19-CV-1147, 2020 WL 5366380 (S.D. Ohio Sept. 8, 2020) ..........................................9

*Peck v. Air Evac EMS, Inc.*,
5:18-cv-00615-DCR, 2019 WL 3219150 (E.D. Ky. July 17, 2019)..................................11, 12

*Taft v. Ackermans*,
No. 02 CIV. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................14

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ...........................................................................10, 18

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ..............................................................................................8, 17

*Zwick Partners, LP v. Quorum Health Corp.*,
No. 3:16-cv-02475, Doc. No. 359 (Md. Tenn. April 27, 2020)........................................14, 21

*In re Zynga Inc. Sec. Litig.*,
No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)...................................13

## RULES AND STATUTES

Class Action Fairness Act, 28 U.S.C. § 1715 ................................................................................7

Federal Rule of Civil Procedure 23 ........................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ....................................................................2, 22

Securities Exchange Act of 1934 ...................................................................................................3

## OTHER AUTHORITIES

Cornerstone Research, *Securities Class Action Settlements: 2020 Review and
Analysis* (2021) ..................................................................................................................2, 19

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation:
2018 Full Year Review* (2019) .........................................................................................14, 19

iv

## I. **PRELIMINARY STATEMENT**

Pursuant to Fed. R. Civ. P. Rule 23(e), Class Representative and Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Class Representative") submits this memorandum of law in support of its unopposed motion for preliminary approval of a settlement of this securities fraud class action filed on behalf of persons who purchased or otherwise acquired Tivity Health, Inc. common stock between March 6, 2017 and November 6, 2017, inclusive, and who were damaged thereby.[1] Defendants do not oppose the relief sought herein.

Pursuant to the Stipulation of Settlement dated June 10, 2021 ("Stipulation"),[2] filed contemporaneously herewith, the Parties have agreed to settle the Action for a payment of $7,500,000 in cash, as described fully in the Stipulation, in return for a release of all claims (the "Settlement"). The Settlement was reached after the case was fully litigated and was only weeks from trial and only after extensive arm's-length negotiations with an experienced and skilled private mediator.

Class Representative respectfully submits that the proposed Settlement is fair, reasonable, and adequate, and therefore asks the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") attached to the Stipulation as Exhibit A. The Preliminary Approval Order will: (1) preliminarily approve the Settlement as set forth in the Stipulation; (2) approve the form and method for

---

[1] Excluded from the Class are Tivity Health, Inc. ("Tivity" or the "Company"), Donato Tramuto, Glenn Hargreaves, Adam Holland (collectively, the "Defendants") and the officers and directors of Tivity during the relevant period, as well as members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

[2] All capitalized terms that are not defined specifically in this memorandum have the same meanings as set forth in the Stipulation.

providing notice of the Settlement to the Class; and (3) schedule a final approval hearing in which the Court will consider the request for final approval of: (a) the Settlement set forth in the Stipulation; (b) the Plan of Allocation of Settlement proceeds among Class Members; (c) Class Counsel's application for an award of attorneys' fees and expenses; and (d) Class Representative's application for reimbursement of costs incurred in supervising the litigation.

Class Representative estimates that the proposed Settlement represents approximately 17% of Class Representative's estimate of the maximum recoverable damages and approximately 22% of its more conservative damages estimate. This is an excellent result when compared to historical statistics of class action settlements. On average, securities class actions between 2011 and 2020 settled for 5% of "simplified tiered damages," far below the value of the Settlement here. *See* Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis* at 6 (2021). Even in cases that survived summary judgment motions, the average settlement value from 2016 through 2020 was 4.8% of simplified tiered damages. *Id.* Given the Settlement's substantial value and the risks inherent in bringing this complex securities class action to trial and possibly appeal, the Settlement represents an excellent result for Class Members. Class Representative requests that the Court preliminarily approve the Settlement and permit notice of the proposed Settlement to be disseminated to Class Members.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

On November 20, 2017, the Action was commenced in this Court by an individual investor who is unrelated to Class Representative. Doc. No. 1. As provided by the Private Securities Litigation Reform Act of 1995, Oklahoma Firefighters Pension and Retirement System filed a motion to serve as Lead Plaintiff, and, by Order dated April 2, 2018, the Court appointed it as Lead Plaintiff and approved of the selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein")

as Lead Counsel, with Branstetter, Stranch & Jennings PLLC ("Branstetter") as Liaison Counsel, for the proposed class. Doc. No. 29.

On June 4, 2016, Class Representative filed the First Amended Complaint ("FAC"), asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. Doc. No. 32. The Complaint alleged, among other things, that throughout the Class Period, Defendants made statements that were false and misleading because they omitted material information about Tivity's customer UnitedHealthcare having begun insourcing a fitness program that was competing with Tivity's own fitness program, SilverSneakers. *Id.*

On August 3, 2018, Defendants moved to dismiss the FAC for failure to state a claim. Doc. No. 38. Class Representative filed its opposition on September 17, 2018 (Doc. No. 47), and Defendants filed their reply on October 9, 2018. Doc. No. 50. On March 18, 2019, the Court denied Defendants' motion to dismiss. Doc. No. 56. On April 1, 2019, Defendants moved for reconsideration of the Court's order denying their motion to dismiss. Doc. No. 63. The Court denied that motion on May 22, 2019.

On April 15, 2019, the Court entered an initial case management order. Doc. No. 67. Per this order, Class Representative moved for class certification on July 1, 2019. Doc. No. 82. Extensive discovery on the class certification motion ensued including the exchange of extensive expert reports, party and non-party document production, and three fact depositions taken by Defendants as well as depositions of the expert witnesses proffered by Class Representative and Defendants. Defendants thereafter responded with a brief in opposition to class certification on October 8, 2019, Doc. No. 93, to which Class Representative replied on December 20, 2019. Doc.

No. 96. On January 29, 2020, the Court granted Class Representative's motion to certify the Class and appointing Lead Counsel Cohen Milstein as Class Counsel. Doc. Nos. 98-99. On February 12, 2020, Defendants filed with the United States Court of Appeals for the Sixth Circuit a Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f), *see* Doc. No. 106 at 1, after which Class Representative filed a response to the petition with the Sixth Circuit, *see id.*, and filed a notice informing the Court that it would submit a proposed plan for disseminating class notice once the Sixth Circuit resolved Defendants' petition. Doc. No. 100.

On March 3, 2020, the Court granted a joint motion to extend several discovery and briefing deadlines by several weeks, Doc. No. 104. Given the logistical challenges that the COVID-19 pandemic had caused, on June 10, 2018, the deadline for fact discovery was subsequently extended from June 30, 2020 to October 2, 2020, in order to allow for the scheduling of several additional depositions, including those of the individual Defendants. Doc. No. 108.

On July 23, 2020, a three-judge panel of the Sixth Circuit denied Defendants' Rule 23(f) petition. Doc. No. 111.

On July 29, 2020, Class Counsel, Class Representative, Defendants' counsel, and a client representative, as well as a representative of one of Defendants' insurance carriers participated in a mediation session with a nationally recognized mediator, Michelle Yoshida of Phillips ADR Enterprises,[3] conducted via Zoom due to the COVID-19 pandemic's restrictions on travel and group gatherings. In advance of the mediation, the Parties prepared and exchanged detailed mediation statements addressing the facts and law of the case, including, among other things,

---

[3] *See* http://www.phillipsadr.com/bios/michelle-yoshida/.

Defendants' defenses and position on damages. This full day mediation session did not result in a resolution.

On August 26, 2020, Class Representative moved for an Order Establishing a Program and Schedule for Notice to the Class of Pending Class Action, Doc. No. 115. Defendants did not oppose this motion, and the Court granted it on December 11, 2020. Doc. No. 120.

Also on December 11, 2020, Defendants moved for both summary judgment and decertification of the Class. ECF Nos. 118 and 121. Class Representative filed a brief with 111 exhibits and statement of disputed facts in opposition to summary judgment on January 19, 2021, Doc. No. 133, as well as a brief in opposition to class decertification on January 26, 2021. Doc. No. 138. Defendants filed a reply in support of summary judgment on February 17, 2021, Doc. No. 142, and a reply in support of class decertification on February 24, 2021. Doc. No. 144. On March 23, 2021, the Court denied both motions. ECF Nos. 149-150.

On April 14, 2021, Class Counsel, Class Representative, Defendants' counsel, a Tivity representative and representatives from two of Defendants' insurance carriers participated in a second mediation session, conducted via Zoom due to the COVID-19 pandemic's restrictions on travel and group gatherings. This mediation session involved a full day of extensive, hard-fought, arm's length negotiations before Ms. Yoshida, but it did not result in a resolution by the end of the day. *See* Doc. No. 156. However, negotiations continued and on April 23, 2021, the Parties accepted the mediator's proposal and reached an agreement in principle to settle the case for $7,500,000 in cash.

On April 24, 2021, the Parties informed the Court that they had reached an agreement in principle to settle the case, and they expected to submit preliminary approval papers to the Court within 45 days. Doc. No. 157. The Court entered an order requiring that the Parties file a

5

Stipulation of Settlement and Motion for Preliminary Approval of Settlement by June 10, 2021.

Doc. No. 158.

III. **SUMMARY OF THE PROPOSED NOTICE PROCESS**

Class Counsel has, subject to Court approval, chosen Epiq Class Action & Claims Solutions, Inc. ("Epiq") to serve as Claims Administrator.[4] In this role, Epiq will administer notice and process the claims for the Settlement. Earlier in the course of the Action, Epiq was already selected by Class Counsel and approved by the Court to serve notice of the pendency of the Action to Class Members. *See* ECF Nos. 120 at 2. Epiq is highly experienced in the administration of securities fraud class action settlements.[5]

Class Representative suggests that within 21 calendar days of Preliminary Approval (the "Notice Date"), a proposed Notice and Proof of Claim substantially in the form set forth in Exhibits A-1 and A-2 to the Stipulation will be mailed to each Class Member identified by records maintained by the Claims Administrator, which include institutional investors and a list of banks and brokerage firms that usually maintain custodial accounts that has been supplemented and refined from execution of the notice of pendency program. A Summary Notice will also be published through the Internet within 10 calendar days of the Notice Date, since that medium is most frequently accessed by investors, and is the most cost-effective.

The Notice describes in plain English the terms of the Settlement, the considerations that led Class Counsel and Class Representative to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may

---

[4] The Court previously approved Epiq to serve as the Notice Administrator to assist Class Counsel in issuing the Notice of Pendency. Doc. No. 120

[5] Epiq, *Securities Center Excellence: Securities Class Action Administration*, https://www.epiqglobal.com/epiq/media/thinking/class-action/securities-center-of-excellence.pdf (last visited May 17, 2021).

be sought, and the proposed reimbursement award for Class Representative. A copy of the Notice, Claims Form and Stipulation of Settlement will also be posted on a website maintained by the Claims Administrator.

The Notice will also set forth the date of the Settlement Fairness Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. It is respectfully requested that the Settlement Fairness Hearing be scheduled 100 calendar days after the Notice Date. This will allow mailing to be completed; Class Members to have ample time to consider their options and, if they choose, to file objections or opt out of the Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1715; as well as time for the Parties to respond to any objections.

The Notice also identifies the date by which claims must be filed, which Class Counsel requests be postmarked 7 calendar days prior to the Settlement Fairness Hearing.

## IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS WARRANTED

### A.   Legal Standard: Since 2018, courts have taken two slightly different approaches to determining whether to preliminarily approve a settlement.

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *on reh'g*, 670 F.2d 71 (6th Cir. 1982). "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits generally, because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Macy v. GC Servs. Ltd. P'ship.*, No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522, at *7 (W.D. Ky. Dec. 6, 2019) (internal quotation marks omitted).

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class may be settled . . . only with the court's approval."). The approval process takes place in three stages: "(1) the court must

preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (internal quotation marks omitted); *see also Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).

When ultimately deciding whether to give final approval of the Settlement, the Court will have to find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Before 2018, Rule 23 did not provide the criteria for whether a settlement is "fair, reasonable, and adequate," so courts in the Sixth Circuit used the following factors (the "*UAW* factors") to determine whether to grant final approval:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). In 2018, however, an amendment to Rule 23 specifically enumerated factors that the Court should consider when determining whether the settlement is "fair, reasonable, and adequate":

> **(A)** the class representatives and class counsel have adequately represented the class;
> **(B)** the proposal was negotiated at arm's length;
> **(C)** the relief provided for the class is adequate, taking into account:
> > **(i)** the costs, risks, and delay of trial and appeal;
> > **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
> > **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>
> **(D)** the proposal treats class members equitably relative to each other.

8

Fed. R. Civ. P. 23(e)(2). Those factors, which generally encompass the Sixth Circuit's *UAW* factors, are not meant "to displace any factor" previously relied on by the courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23, advisory committee's note to 2018 amendments. Because the Sixth Circuit has not yet considered the factors listed in the new version of Rule 23, courts in the Sixth Circuit have been considering both the new set of factors listed in Rule 23(e)(2) and the *UAW* factors when determining whether to grant final approval to a class-action settlement. *See, e.g., Macy*, 2019 WL 6684522, at *2 (listing cases).

At this preliminary stage of approval, however, the Court need not make a final determination on those factors; rather, the Court must simply determine whether it will "likely be able to" grant final approval to the Settlement. Fed. R. Civ. P. 23(e)(1)(B). That is, the Court must make a "preliminary determination" of whether the Settlement meets Rule 23(e)'s requirement of being "fair, reasonable, and adequate." *Macy*, 2019 WL 6684522, at *1 (internal quotation marks omitted).

Courts in the Sixth Circuit have taken two approaches to making that preliminary determination. Since 2018, some courts have preliminarily examined each of the final-approval factors now listed in Rule 23(e)(2), as well as each of the Sixth Circuit's *UAW* factors. *See, e.g., Macy*, 2019 WL 6684522, at *1-2. Other courts, however, have continued to apply the standard for preliminary approval that courts used in the Sixth Circuit before the 2018 amendment to Rule 23. *See, e.g., Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 5366380, at *2 (S.D. Ohio Sept. 8, 2020). Under that standard, a district court makes its preliminary-approval decision not by examining each of the final-approval factors, but rather by asking whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with [*sic*] the range of possible approval." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (quoting Manual for Complex Litig. § 30.44 (2d ed. 1985)).

In practice, those two approaches to preliminary approval involve similar substantive and procedural considerations and are "unlikely to generate a significant change in the settlement process or outcome," because the 2018 amendment "essentially codified prior practice." 4 Newberg on Class Actions § 13:13 (5th ed.). Nonetheless, this memorandum demonstrates that the proposed settlement should receive preliminary approval under either approach.

**B.** **The Rule 23(e)(2) and *UAE* factors considered in connection with final approval support granting preliminary approval.**

The proposed $7,500,000 Settlement easily satisfies the Rule 23(e)(2) factors and the *UAW* factors used by courts in the Sixth Circuit to determine whether to grant final approval to a settlement. Because the Class has already been certified and the Court will "likely be able to" grant final approval of the proposed settlement, preliminary approval is warranted. Rule 23(e)(1)(B).

**1.** **The relevant Rule 23(e)(2) factors support preliminary approval of the Settlement.**

**(a)** **Class Representative and Class Counsel have adequately represented the Class**

The first factor is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Court recognized the adequacy of Class Representative and Class Counsel when it certified the Class. For more than three years now, Class Representative and Class Counsel have vigorously and successfully litigated on behalf of the Class. Defendants produced more than 200,000 pages of documents, and third parties produced more than 23,000 pages of documents as well. The Parties took 5 expert depositions and 13 fact

depositions, including those of Defendants, other employees of Tivity, and several third parties (such as UnitedHealthcare and its sister company Optum). Class Representative responded to written discovery and also served interrogatories and requests for admission, to which Defendants responded. Class Representative and Class Counsel successfully defended against Defendants' motion to dismiss, opposition to class certification, motion to decertify the Class, and motion for summary judgment, and they engaged in intensive pretrial preparations until minutes before the Parties reached a Settlement. They twice prepared for and attended mediations and refused to accept unsatisfactory settlement offers, opting instead to continue carrying the case toward trial. Furthermore, their efforts are evidenced by the recovery on behalf of the Class.

### (b) The proposed Settlement was negotiated at arm's length

Another factor bearing on approval of the Settlement is whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. at 23(e)(2)(B). The Parties arrived at this settlement after more than three years of intensive litigation, in which the Parties engaged in extensive discovery and Class Representative survived multiple dispositive motions. *See Macy*, 2019 WL 6684522, at *3 ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length." (quoting *Newberg on Class Actions* § 13:14)); *see also Peck v. Air Evac EMS, Inc.*, 5:18-cv-00615-DCR, 2019 WL 3219150, at *6 (E.D. Ky. July 17, 2019) (emphasizing "negotiations with the assistance of an experienced mediator"). The Settlement was reached with the help of an experienced mediator, Michelle Yoshida, after two mediation sessions and extensive communications between the Parties and Ms. Yoshida in the wake of the second session, culminating in a decision by the Parties to accept Ms. Yoshida's proposed settlement amount. *See*

*id.* ("The fact that the settlement was reached through mediation likewise suggests an 'absence of collusion'" (quoting *Newberg on Class Actions* § 13:14)).

> **(c)    The proposed Settlement is adequate in light of the costs, risks, and delay of trial and post-trial appeal**

The next factor bearing on the adequacy of the relief provided by the Settlement is the "costs, risks, and delay of trial and appeal." Fed R. Civ. P. 23(e)(2)(C)(i). The costs and delay of continued litigation would have been substantial. The trial, set to begin on May 18, 2021, would likely have lasted at least two weeks, and it would have involved complicated facts and complex legal issues and economic analysis. A subsequent appeal would likely have prevented a final outcome for years.

The risks to the Class of bringing the case to trial would also have been substantial. It is difficult to prove liability in securities fraud cases. *See, e.g., Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019) (noting "the difficulty of establishing liability is a common risk of securities litigation" (internal quotation marks omitted)). In particular, "proof of scienter is typically a difficult challenge in a securities fraud action." *Id.* Here, numerous elements would have been contested at trial, including scienter, materiality, misleadingness and loss causation. Even if Class Representative were able to prove liability, the Class would still be at risk of not winning substantial damages.

Thus, continued litigation – including appellate litigation – would have proved costly, slow, and risky, despite Class Representative and Class Counsel's success to date and belief that their claims are meritorious. In view of these considerations, the certainty of the $7,500,000 recovery weighs strongly in favor of preliminary approval of the Settlement.

> **(d)    The proposed method of distributing relief is effective and Class Members are treated equitably**

The proposed notice and claims administration process is effective. *See* Rule 23(e)(2)(C)(ii). The notice plan includes direct mail of the Notice and Proof of Claim form to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice over the *PR Newswire*. In addition, a case-specific website established during the notice of pendency phase of the Action will be updated and settlement-related documents will be added thereto. As discussed further below, *see infra* Part V, this Notice plan satisfies the requirements of Rule 23 and due process.

The proposed Settlement also "treats class members equitably relative to each other." 23(e)(2)(D). The Plan of Allocation described in the Notice (Ex. A-1 to the Stipulation) provides evidence that Class Members will be treated equitably. A plan of allocation "should provide class members who suffered greater harm . . . a larger share," and distinctions between class members may be made based on the "timing of purchases of the securities at issue." *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) (internal quotation marks omitted). "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* Under the Plan of Allocation here, each claimant will receive their pro rata share of their recognized loss depending on when the share was purchased and sold. The Plan of Allocation accounts for one inflation event: Defendants' challenged statements on April 27, 2017, which, according to the damages analysis by Class Representative's expert, caused a significant increase in artificial inflation. This one inflation event creates a modest difference in the calculated artificial inflation per share for purchases made before and after April 27, 2017—$13.68 compared to $16.54—and is consistent with Class Representative's theory of liability.

This Plan of Allocation thus has a rational basis, and it was formulated by Class Counsel and its damages expert based on Class Representative's theory of liability.

### (e)  Attorney's fees and expense are reasonable

Under Rule 23(e)(2)(C)(iii), another factor bearing on the adequacy of the Settlement is the proposed award of attorney's fees. As stated in the Notice, Class Counsel will request fees not to exceed 25% of the Settlement Fund to be paid at the time the Court makes its award. This request is entirely consistent with the fees awarded in the Sixth Circuit for securities class action settlements of comparable size.

Courts regularly award fees of 25% or more even when a settlement is reached at a much earlier stage of litigation. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2018 Full Year Review*, at 41 (2019) (showing that the median plaintiffs' attorneys' fees as a percentage of settlement value for settlements between $5 and $10 million was 30% from 1996 through 2018); *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (awarding 30% of $10 million settlement, plus expenditures); *Taft v. Ackermans*, No. 02 CIV 7951 (PKL), 2007 WL 414493, at *11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement, prior to ruling on motion to dismiss); *see also* Appendix A, *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-02475, Doc. No. 359 at 10-13 (Md. Tenn. April 27, 2020) (awarding 30% of $18 million settlement, in addition to $1.9 million in litigation expenses after denying summary judgment). Here, Class Counsel worked on this case for over three years, taking it through discovery, summary-judgment briefing and pre-trial preparations in order to obtain the best outcome for the Class. Accordingly, the maximum fee that could be requested by Class Counsel is well within the range of reason.

Class Counsel will seek reimbursement of litigation expenses, charges, and costs, plus interests not to exceed $750,000. Class Representative will also request $2,500 for its many hours

of work supervising Class Counsel during this Action, including sitting for a deposition and attending multiple mediations.

### (f)     Additional agreements

Also bearing on the adequacy of a settlement is "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

The Parties have entered into a confidential "Supplemental Agreement" to the Stipulation that establishes certain conditions under which Tivity may terminate or modify the Settlement if Class Members who collectively purchased a specific number of shares during the Class Period request exclusion (or "opt out") from the Settlement. *See* Stip. ¶ 36. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Priv. Litig.*, 3:12-md-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

### 2.     The Sixth Circuit *UAW* factors are also satisfied.

The *UAW* factors considered by the courts in the Sixth Circuit also weigh in favor of preliminary approval. *UAW*'s first two factors—the potential for collusion and the risk and complexity of litigation—are addressed at Parts IV.B.1.b and IV.B.1.c, *supra*, in the discussions of Rule 23(e)(2) factors. The remaining *UAW* factors also all weigh in favor of preliminary

approval, other than the one factor—reactions from absent class members—that is simply not assessable until the final-approval stage.[6]

### (a) The amount of discovery engaged in by the Parties supports approval of the Settlement

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *New York State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016). As discussed above, the Parties fully completed discovery relating to class certification, fact discovery, and expert discovery. This entailed interrogatories and requests for admission, the production and review of more than 200,000 pages of documents, and the taking of 18 depositions, including depositions of three experts. This extensive and completed discovery weighs strongly in favor of approving the Settlement. *See Macy*, 2019 WL 6684522, at *2.

### (b) The likelihood of success on the merits weighs in favor of approval of the proposed Settlement

"When considering this factor, the Court must balance Lead Plaintiff's likelihood of success on the merits against the relief offered in the settlement." *New York State Tchrs.' Ret. Sys.*, 315 F.R.D. at 236. As discussed in the section on the Rule 23(e)(2) factors, *see supra* Part IV.B, proving liability at trial would have been hotly contested and therefore risky, particularly on the elements of scienter, materiality, misleadingness and loss causation—and even if Class Representative was to prove liability on many of the statements at issue, there would have been a battle among experts over the extent of damages. *See Connectivity Sys. Inc. v. Nat'l City Bank*, 2:08-cv-01119-MHW, 2011 WL 292008, at *2 (S.D. Ohio Jan. 26, 2011) ("Acceptance of expert

---

[6] It should be noted that no Class Member sought exclusion after receiving the notice of pendency.

testimony is always far from certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.' The Settlement Agreement reached by the parties avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class."). When considering those challenges to obtaining substantial recovery, the certitude of the $7,500,000 in cash weighs in favor of settlement, as evidenced by the fact that this makes up a significantly larger percentage of potential losses than the average securities class action settlement at a similar stage and of a similar size. *See infra* Part IV.C.

### (c) The informed and reasoned opinions of Class Counsel and Class Representative warrant approval

"The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006); *see also Williams*, 720 F.2d at 922–23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Class Counsel are well-regarded practitioners with extensive experience in securities class action litigation, and they are familiar with the legal and factual issues of this case after having carried the case through full expert and fact discovery, multiple dispositive motions, and two all-day mediation sessions. In Class Counsel's view, the Settlement provides substantial benefits to the Class.

### (d) The reaction of absent Class Members is not yet available

Another *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. Because notice regarding the proposed Settlement has not yet been mailed, this factor cannot be evaluated until the hearing for final approval of the Settlement.

### (e) The public interest weighs in favor of approval of the Settlement

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). Here, for reasons discussed above, proving liability and obtaining significant damages at trial would indeed be difficult and unpredictable, *see supra* Part IV.B.1.c, and the public interest is served by "compensat[ing] Class Members for their contested damages now, rather than prolonging implementation until after a trial and appeal." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990).

### C. The Settlement also satisfies the traditional preliminary-approval standard.

As discussed above, before 2018 courts in the Sixth Circuit decided preliminary approval by asking whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with [*sic*] the range of possible approval." *In re Telectronics*, 137 F. Supp. 2d at 1015 (quoting Manual for Complex Litig. § 30.44 (2d ed. 1985)). The Settlement easily meets those requirements.

First, for reasons discussed in more detail in Part IV.B.1.b, *supra*, the Settlement is the "product of serious, informed, non-collusive negotiations." The Parties vigorously litigated the Action for over three years, through discovery and multiple dispositive motions, up until three weeks before trial, at which time the Parties were exchanging pretrial submissions and briefing motions *in limine*. They agreed to the Settlement with the help of a professional mediator, after having fallen short of reaching an agreement at two different full-day mediation sessions.

Second, for reasons discussed in more detail in Part IV.B.1.b, *supra*, the case does not "improperly grant preferential treatment to class representatives or segments of the class." The

Plan of Allocation assumes a similar amount of artificial inflation across the Class Period, except for a modest increase after April 27, 2017, which is based on Class Representative's damages expert's analysis and is consistent with Class Representative's theory of liability.

Finally, the Settlement "falls within the range of possible approval." Class Representative's damages analysis estimated that if Class Representative were able to prove at trial all aspects of liability and to recover the full amount of the alleged inflation for every Class Member, the maximum damages would be approximately $44 million. This damages analysis also demonstrated that a more conservative outcome would provide for maximum damages of approximately $34 million. Therefore, the $7,500,000 Settlement represents a range of approximately 17% to approximately 22% of potential recovery for the Class. The recovery here as a percentage of possible damages far exceeds the historical average for similar cases. Looking at all settlements in Rule 10b-5 securities-fraud cases from 2011 through 2020, the average settlement was for just 5% of "simplified tiered damages." Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis* at 6 (2021).[7] Cases with $25-74 million of "simplified tiered damages" at stake settled on average for 7.6% of those potential damages, and that figure went down to 5.3% in 2020. *Id*. Even in cases that made it past motions for summary judgment, the average settlement value from 2016 through 2020 was 4.8% of simplified tiered damages. *Id.* at 14; *see also* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2018 Full Year Review*, at 35 (2019) (noting that in 2018 the median of settlement value as a percentage of "NERA-Defined Investor Losses by Level of Investor Losses" was 8.4% for cases with investor losses between $20

---

[7] https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis

and $49 million).[8]  Accordingly, the proposed Settlement is an excellent outcome in light of the above data.

*     *     *     *

Because the Settlement easily satisfies any preliminary-approval standard used by courts in the Sixth Circuit, the Court should grant preliminary approval of the Settlement and allow notice of the terms of the Settlement to be sent to the Class and should schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members regarding the fairness of the Settlement, the Plan of Allocation, and Class Counsel's request for an award of fees and expenses and reimbursement to Class Representative for its expenses in overseeing the litigation.

## V.      NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

The Federal Rules of Civil Procedure require the Court to direct the "best notice that is practicable under the circumstances, including individual notice to all [class] members who can be identified through reasonable effort" and "who would be bound by the propos[ed]" settlement. Fed. R. Civ. P. 23(c)(2)(B) and (e)(1)(B) (notice must be given "in a reasonable manner"). "[N]otice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)). The Court previously approved notice to the Class under this standard. Doc. No. 120. The settlement notice program builds on information already gained from the dissemination of the class action pendency notice and follows a similar dissemination plan.

---

[8] https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf

20

The proposed Notice, which the Claims Administrator would send to Class Members by first class mail, is attached as Exhibit A-1 to the Stipulation. The Notice describes in plain English the terms of the Settlement, the considerations that led Class Counsel to conclude that the Settlement is fair and adequate, the maximum attorneys' fees and expenses that may be sought, the procedure to object to the Settlement, and the date and place of the Settlement Fairness Hearing.

With the Court's permission, the Claims Administrator will commence mailing the Notice to Class Members identified by records maintained by the Claims Administrator, which include institutional investors and a list of banks and brokerage firms that usually maintain custodial accounts, and will also post the Notice on the internet within 21 calendar days of approval, and mailed to shareholders identified in requests to nominees as soon thereafter as addresses are received. The Summary Notice, set forth in Exhibit A-3 to the Stipulation, will be published over the *PRNewswire* within 10 calendar days thereafter. The Claims Administrator will also make additional copies of the Notice available to nominee holders such as brokerage firms that held Tivity common stock during the Class Period. Such nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide the Claims Administrator with a list of the names and addresses of such beneficial owners so that the Claims Administrator can mail the Notice to such beneficial owners directly.

Courts regularly find that Notice by first-class mail, combined with the publication of the Summary Notice (and publishing both on a settlement website), is the "best notice practicable under the circumstances" and satisfies the requirements of Rule 23 and due process. *See, e.g.,* Appendix A, *Zwick Partners, LP v. Quorum Health Corp.*; *see also* Doc. No. 120 at 3 (approving the program for class notice in this Action).

In terms of its form, the Notice clearly and accurately discloses the information material to a Class Member's decision whether to accept, object to, or opt out of the Settlement. The Notice provides detailed information concerning (a) the proposed Settlement (including the Settlement amount and releases to Defendants); (b) the nature, history, and progress of the Action; (c) the date of the Settlement Fairness Hearing; (d) the proposed Plan of Allocation; (e) the maximum fees and expenses to be sought by Class Counsel and reimbursement award to be sought by Class Representative; (f) the rights of Class Members, including the procedures for opting out of the Settlement,[9] filing a Proof of Claim, or objecting to the Settlement, Plan of Allocation, Class Counsel's request for fees and expenses, or Class Representative's request for reimbursement; and (g) how to contact Class Counsel, access the Court's docket, or otherwise learn more about the Action and Settlement.

As required by Rules 23(c)(2)(B) and (e)(1), the Notice objectively and neutrally apprises Class Members of the Action's nature, claims, and issues, Class definition, procedures and deadlines for any Class Members who so wish to exclude themselves from the Settlement or object, and binding effect of the judgment on Class Members. And, as required by PSLRA, 15 U.S.C. ¶ 78u-4(a)(7), the Notice provides:

- a cover page summarizing the information contained in the Notice;

---

[9] As noted above, *see supra* n. 6, not a single Class Member opted out of the Class after receiving the Notice of Pendency. However, in light of Rule 23(e) and the Advisory Committee's note, the Notice will provide Class Members with another opportunity to opt out of the Class. *See* Fed. R. Civ. P. 23(e)(4) ("If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so."); *see also* Fed. R. Civ. P. 23, advisory committee's note to 2018 amendments ("A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known.").

- a statement of the Class Members' recovery before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by any specific Class Member to vary greatly across the Class;
- the general terms of the Settlement;
- a statement of the potential outcome of the case including a statement concerning the issues on which the Parties disagree;
- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;
- information on how to contact the Claims Administrator and/or Class Counsel (including names, addresses, telephone numbers, and websites); and
- a discussion of the reasons for the proposed Settlement, including the factors Class Representative and the Defendants considered in reaching the Settlement.

The Summary Notice (Ex. A-3) provides similar abbreviated information.

In sum, the method of notice meets with the requirements of due process and Rule 23, and the proposed Notice provides all of the required information. Accordingly, the Court should approve the proposed form and manner of Notice and direct that notice be given to the Class.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Class Representative proposes the following schedule:

| Event | Proposed Due Date |
|---|---|
| Date for Settlement Fairness Hearing | At least 100 calendar days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 2) |
| Serving of CAFA Notice | No later than 10 days following the filing of the Stipulation with the Court. (Preliminary Approval Order ¶ 24). |
| Mailing of Notice and Proof of Claim and Release | No later than 21 calendar days after the entry of Preliminary Approval Order (Preliminary Approval Order ¶ 5) |
| Publication of Summary Notice | No later than 10 calendar days after the Notice Date (Preliminary Approval Order ¶ 5) |
| Filing deadline for requests for exclusion | Received no later than 14 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 13) |

| Event | Proposed Due Date |
|-------|-------------------|
| Date for Class Representative to file and serve papers in support of the Settlement, the Plan of Allocation, and the application for attorneys' fees and reimbursement of expenses. | No later than 21 calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order ¶ 23) |
| Filing deadline for objections. | No later than 14 calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order ¶ 14) |
| Date for Class Representative to file reply papers in support of the Settlement, the Plan of Allocation, and the application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order ¶ 23) |
| Date for Claims to be Filed | No later than 7 calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order ¶ 7) |

## VII.   CONCLUSION

In light of the foregoing, Class Representative respectfully requests that the Court enter the Preliminary Approval Order preliminarily approving the Settlement, approving the form and method of notice to Class Members, and scheduling a Settlement Fairness Hearing and deadlines for the mailing and publication of the Notices, the filing of Class Member objections, the filing of Class Member opt-out notices, and the filing of Class Counsel's application for attorneys' fees and expenses and for a reimbursement award to Class Representative.

Dated:  June 10, 2021                    Respectfully submitted,

*/s/ Benjamin A. Gastel*
**BRANSTETTER, STRANCH &**
**JENNINGS, PLLC**
J. Gerard Stranch IV (BPR #23045)
Benjamin A. Gastel (BPR #28699)
223 Rosa L. Parks Avenue
Suite 200

Nashville, TN 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gerards@bsjfirm.com
beng@bsjfirm.com

*Liaison Counsel*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (*pro hac vice*)
Daniel S. Sommers (*pro hac vice*)
Joshua C. Handelsman (*pro hac vice*)
1100 New York Avenue N.W.
Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
jhandelsman@cohenmilstein.com

Christina D. Saler (*pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 3410
Philadelphia, PA 19103
Telephone: (267) 479-5707
Facsimile: (267) 479-5701
csaler@cohenmilstein.com

Jessica (Ji Eun) Kim (*pro hac vice*)
88 Pine Street
14th Floor
New York, NY 10005
Telephone: (212) 838-0979
Facsimile: (212) 838-7745
jekim@cohenmilstein.com

*Counsel for Lead Plaintiff and Class Representative*

25

# Appendix A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ZWICK PARTNERS, LP and APARNA RAO, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | No. 3:16-cv-02475 |
| | ) | |
| v. | ) | |
| | ) | |
| QUORUM HEALTH CORPORATION, COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, W. LARRY CASH, THOMAS D. MILLER and MICHAEL J. CULOTTA, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## FINAL JUDGMENT APPROVING CLASS ACTION SETTLEMENT

This matter comes before the Court on Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds (Doc. No. 347) and Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Class Representative (Doc. No. 349), which are not opposed by Defendants.

Class Representative Zwick Partners, LP ("Plaintiff"), on behalf of itself and the Class (see Doc. No. 342 at 11), and Defendants Community Health Systems, Inc. ("CHSI"), Wayne T. Smith, W. Larry Cash, Michael J. Culotta, Quorum Health Corporation ("Quorum"), and Thomas D. Miller (collectively, the "Defendants," and, together with Plaintiff, on behalf of itself and the other members of the Class, the "Parties")[1] have agreed—subject to Court approval following notice to the Class and a settlement fairness hearing—to settle the above-captioned matter (the "Action")

---

[1] Smith and Cash, together, the "Individual CHSI Defendants," and Miller and Culotta, together, the "Individual Quorum Defendants."

upon the terms set forth in July 16, 2020 Stipulation and Agreement of Settlement ("Stipulation") (Doc. No. 342), and the Amendment to the Stipulation and Agreement of Settlement dated November 10, 2020. (Doc. No. 357-3)("Amendment")(Collectively referred to as "Stipulation").

On July 27, 2020, the Court preliminarily approved the Settlement, directed that notice of the proposed Settlement be provided to Class Members, provided Class Members with the opportunity either to exclude themselves from the Class or to object to the Settlement, and scheduled a hearing regarding final approval of the Settlement. (Doc. No. 345). The Court conducted a Settlement Fairness Hearing on November 30, 2020 to consider, among other things, whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Class, and should therefore be approved, whether a judgment should be entered dismissing the Action with prejudice against the Defendants, and whether the requested fees and costs are reasonable.

Having reviewed and considered the Parties' Stipulation, the record in this case, Plaintiffs' Memoranda of Law in support of the pending motions (Doc. Nos. 348, 350, 356) and supporting exhibits and declarations (see Doc. Nos. 351, 357), and the arguments of counsel, the Court finds and concludes as follows:

1. **Jurisdiction**. The Court has jurisdiction over the subject matter of the Action and all matters relating to the Settlement and has personal jurisdiction over all of the Parties and each of the Class Members.

2. **Incorporation of Settlement Documents**. All defined terms contained herein, unless otherwise defined, shall have the same meanings as set forth in the Stipulation. This Judgment also incorporates and makes a part hereof: (a) the Stipulation (Doc. No. 342 and 357-3); (b) the Notice (Doc. No. 342-2); and (c) the Summary Notice (Doc. No. 342-4), all of which were filed with the Court.

2

3.     **Notice**. Dissemination of the Notice and the publication of Summary Notice was accomplished as set forth in the Stipulation and in the Court's July 21, 2020 Order directing notice to the Class. Notice constituted the best notice practical under the circumstances, constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement, and met the requirements of Rule 23(c)(2) and (e)(1), due process, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the extent applicable to the Action, and all other applicable law and rules. Notice was also reasonably calculated, under the circumstances, to apprise Class Members of (a) the pendency of the Action; (b) the effect of the proposed Settlement (including the Releases to be provided thereunder); (c) Class Counsel's motion for an award of attorneys' fees, reimbursement of Litigation Expenses, and a compensatory award to Plaintiff; (d) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Class Counsel's motion for attorneys' fees, reimbursement of Litigation Expenses, and a compensatory award to Plaintiff; (e) their right to exclude themselves from the Class; and (f) their right to appear at the Settlement Fairness Hearing.

4.     **Objections**. No objections were made to the Settlement either before or during the Settlement Fairness Hearing.

5.     **Final Settlement Approval and Dismissal of Claims**. Under Federal Rule of Civil Procedure 23(e)(2), after a hearing, the Court finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects fair, reasonable, and adequate to the Class. Specifically, the Court finds as follows:

3

a.      Plaintiff and Class Counsel have vigorously represented the interests of the Class, having prosecuted this action on behalf of the Class for more than four years. Specifically, over 35 fact and expert depositions were taken by the Parties, including three depositions of Plaintiff and its managing partners, and over 550,000 pages of documents were reviewed. Plaintiff and Class Counsel successfully defended against Defendants' motions to dismiss, achieved class certification, successfully defended against Defendants' motion for summary judgment and were completing their trial preparation when the Settlement was reached. Counsel demonstrated knowledge about the case and expertise in the field of securities litigation.

b.      The Settlement arises out of arm's-length, informed, and non-collusive negotiations between counsel for Plaintiffs and the Defendants. Specifically, during contentious, hard-fought litigation, the parties engaged a neutral, The Honorable Gary Feess (ret.), to conduct mediation. The parties met in person on two separate days and engaged in hours of additional conversations with the mediator by telephone.

c.      The Settlement creates a settlement fund of $18 million, which represents between 12.7% and 42.9% of estimated recoverable damages. The Court finds this is a more than adequate, indeed extraordinary result, considering: (i) the costs, risks, and delay of trial and appeal, particularly in light of the complex nature of Plaintiffs' case and the multiple potential defenses available at trial; (ii) the effectiveness and straightforwardness of the proposed claims process; (iii) the reasonableness of the request for an award of attorneys' fees and costs and service awards for the class representatives; and (iv) that the only agreement identified under Rule 23(e)(3) consists of the Amendment that sets forth certain conditions under which the Settlement may be withdrawn or terminated at Defendants' sole discretion if Class Members who meet certain criteria exclude themselves from the Class.

4

d.     The Court finds that Plaintiffs' proposed plan of allocation is fair, reasonable, and adequate. Under the Plan of Allocation set out in the Notice, Class Members are treated equitably relative to each other, based on the timing of their purchase or acquisition of Quorum common stock during the Class Period, and any subsequent sales of those shares, by providing that each Authorized Claimant shall receive his, her, or its pro rata share of the Net Settlement Fund based on the amount of their Recognized Losses.

6.     The Settlement is also fair, reasonable, and adequate considering the factors enumerated by the Sixth Circuit: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

a.     The Settlement was reached after years of contested litigation, including certification of the Class, and multiple mediation efforts that concluded only shortly before trial. There is no risk of fraud or collusion.

b.     This case was extraordinarily complex and expensive, and further litigation would only be more so. Securities class actions are complex, and Plaintiffs' claims in this case involved complicated facts and complex accounting, valuation, legal issues, and economic analysis.

c.     The parties engaged in full discovery, with the case ready for trial when the Settlement was reached.

d.     The Class faced significant risk, on both liability and damages, at trial and on appeal.

e.     Plaintiff and Class Counsel unreservedly support the Settlement.

5

f.     The reaction of absent class members weighs in favor of approval, as no Class Members objected.

g.     The public interest favors settlement of complex litigation and class actions, particularly where settlement ensures effective enforcement of securities laws.

7.     Accordingly, the Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation. The Action and all of the claims asserted against Defendants in the Action by Plaintiff and the other Class Members are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8.     **Binding Effect**. The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Plaintiff, and all other Class Members (regardless of whether or not any individual Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

9.     **Releases and Bars**. The Releases set forth in paragraphs 4 through 7 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, the Court orders that:

a.     Without further action by anyone, and subject to paragraph 12 below, upon the Effective Date of the Settlement, Plaintiff and each of the other Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, and on behalf of any other person or entity legally entitled to bring Released Plaintiffs' Claims on behalf of any Class Member, shall be deemed to have, and by operation of law and of this Judgment shall have compromised, settled, released, resolved,

6

relinquished, remised, waived, and discharged, fully, finally, and forever, each and every Released Plaintiffs' Claim against the Defendants' Releasees, and shall forever be barred and enjoined from commencing, instituting, maintaining, prosecuting, or continuing to prosecute any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees, in this Action or in any other proceeding. This Release shall not apply to any Excluded Plaintiffs' Claims.

b.      Without further action by anyone, and subject to paragraph 12 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims on behalf of Defendants, shall be deemed to have, and by operation of law and of this Judgment shall have compromised, settled, released, resolved, relinquished, waived, and discharged, fully, finally, and forever, each and every Released Defendants' Claim against the Plaintiff's Releasees, and shall forever be barred and enjoined from commencing, instituting, maintaining, prosecuting, or continuing to prosecute any or all of the Released Defendants' Claims against any of the Plaintiff's Releasees, in this Action or in any other proceeding. This Release shall not apply to any Excluded Defendants' Claims.

10.     In accordance with 15 U.S.C. § 78u-4(f)(7)(A) and pursuant to federal common law, any and all claims that are brought by any person against Defendants (a) for contribution or indemnification arising out of any Released Plaintiffs' Claim, or (b) where the damage to the claimant is measured by reference to the claimant's liability to Plaintiff or the Class, are hereby permanently barred and discharged. Any such claims brought by Defendants against any person (other than non-Defendant persons whose liability to Plaintiff or the Class is extinguished by this Judgment) are likewise permanently barred and discharged. Provided, however, that nothing in

7

this paragraph or Stipulation shall apply to bar or otherwise affect any claim of right to indemnification between: (1) CHSI and any present or former officer or director of CHSI, except, to the extent applicable, any of the Individual Quorum Defendants; (2) Quorum and any present or former officer or director of Quorum, except, to the extent applicable, any of the Individual CHSI Defendants; or (3) any claim for insurance coverage by any Defendant.

11. Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to: (a) any act, omission, or determination of Plaintiff's Counsel, the Class Escrow Agent, or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (b) the management, investment, or distribution of the Settlement Fund; (c) the Plan of Allocation; (d) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (e) any losses suffered by, or fluctuations in the value of, the Settlement Fund; and (f) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

12. Notwithstanding paragraphs 9a – 11 above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

13. **Rule 11 Findings**. The Court finds and concludes that the Parties and their respective counsel have represented to the Court that they have each complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

14. **No Admissions**. Neither this Judgment, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the

8

execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

a.      shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

b.      shall be offered against Plaintiff or any of the Plaintiff's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Plaintiff or any of the Plaintiff's Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable in this Action would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against Plaintiff or any of the Plaintiff's Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

c.      shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount that could be

9

or would have been recovered after trial; *provided, however, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.*

15. **Retention of Jurisdiction**. Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the administration and distribution of the Settlement Fund; and (c) the Class Members for all matters relating to the Action.

16. **Modification of the Agreement of Settlement**. Without further approval from the Court, Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Class Members in connection with the Settlement. Without further order of the Court, Plaintiff and Defendants may agree to reasonable extensions of time to carry out any of the provisions of the Settlement.

17. **Plan of Allocation**. The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Class Members, and the Claims Administrator are directed to administer the Plan of Allocation in accordance with its terms and the terms of the Stipulation.

18. **Attorneys' Fees, Litigation Expenses, and Compensatory Award**. The Court will grant Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Class Representative (Doc. No. 349) and award Class Counsel attorneys' fees in the amount of $5,400,000, plus interest, reimbursement of $1,898,839.09 in expenses, plus

interest, and a compensatory award in the amounts of $35,000 to Plaintiff to be paid from the Settlement Fund. In awarding these amounts, the Court finds as follows:

a. The resolution of this case has created a common benefit fund for the class, so it is appropriate to assess attorney's fees against the fund. Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).

b. Class Counsel's requested fee award is fair and reasonable under the percentage-of-the-fund approach. This is the preferred method where, as here, "a substantial common fund has been established for the benefit of class members through the efforts of class counsel." In re Se. Milk Antitrust Litig., No. 07-208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013). While the requested fee of thirty percent of the fund is very significant, it "is certainly within the range often awarded in common fund cases, both nationwide and in the Sixth Circuit," and is appropriate given the exceptional result Class Counsel achieved notwithstanding substantial risk. Id. at *3.

c. The requested fee meets all of the factors the Sixth Circuit articulated in Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974), specifically:

1) the recovery of $18 million, which represents between 12.7% and 42.9% of Plaintiffs' estimated Class-wide damages, is an excellent outcome for the Class, especially relative to historical range of securities class action settlements, see, e.g., Cornerstone Research, Securities Class Action Settlements: 2019 Review and Analysis at 6, (2020)[2] (observing that between 2010 and 2018 the median settlement as a percentage of damages between $75 million and $149 million was 4.9%); NERA Economic Consulting, Recent Trends in Securities

---

[2] https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis

Class Action Litigation: 2018 Full Year Review, at 35 (2019)[3] (observing that in 2018 the median of settlement value as a percentage of damages was 4.7% for losses between $50 million and $99 million, and 3.1% for losses between $100 million and $199 million);

2)     society has a strong interest in compensating Class Counsel for the risks and complex issues posed by this case, thereby encouraging others to bring similar litigation in the future;

3)     fees and reimbursement of costs in this case were entirely contingent upon success, creating a risk of under-compensation in the absence of settlement or victory at trial, see Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 795 (N.D. Ohio 2010);

4)     Class Counsel devoted over nine thousand hours to this case and the time value of their services was substantial;

5)     this class action involved complicated facts and complex accounting, valuation, legal issues, and economic analysis, requiring Class Counsel to overcome substantial hurdles to prove their claims; and

6)     Class Counsel, who are experienced class action and securities law practitioners, displayed skill and commitment throughout the litigation.

d.     The Court has confirmed the reasonableness of Class Counsel's fee request by conducting a lodestar cross-check. This involves multiplying reasonable rates by reasonable hours. Gascho v. Global Fitness Holdings, LLC, 822 F.3d 269, 279 (6th Cir. 2016). The "sum may then be increased by a 'multiplier' to account for the costs and risks involved in the litigation, as well as the complexities of the case and the size of the recovery." In re Sulzer Hip Prosthesis &

---

[3] https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf

Knee Prosthesis Liab. Litig., 268 F. Supp. 2d 907, 922 (N.D. Ohio 2003). The Court finds that Class Counsel's reasonable lodestar was $5,724,495.00 based on Counsel's hourly billing rates for the period from the inception of the case until November 9, 2020, see Doc. No. 351 at ¶¶ 103–04, and that an award of $5,400,000.00 yields a multiplier on a thirty percent fee of 0.94. This multiplier falls well below an acceptable range. See, e.g., In re Cardinal Health Inc. Sec. Litigs., 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding a multiplier of 6.0 and noting that typical multipliers range from 1.3 to 4.5). The use of current (2020) rates is appropriate to "compensate for the delay in payment during the pendency of the litigation." In re UnumProvident Corp. Deriv. Litig., No. 02- 386, 2010 WL 289179, at *9 (E.D. Tenn. Jan. 20, 2010).

   e. Class Counsel reasonably incurred a total of $1,898,839.09 in litigation expenses for which Class Counsel seek reimbursement in this case. Class Counsel "is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 535 (E.D. Mich. 2003). Moreover, this amount is less than the $2 million limit disclosed in the Notice.

   f. The requested class representative award of $35,000 to Plaintiff is justified by the time and resources both invested into supervising and prosecuting this case. The awards is also justified as an economic incentive to others to bring securities litigation even though their claims may not be sizable.

   g. No objections were made to Class Counsel's application for an award of attorneys' fees and reimbursement of costs and expenses, or to Class Representative's request for reimbursement of its reasonable costs and expenses.

19. **Termination of Settlement**. If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, including as a result of any appeals, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Plaintiff, Class Members, and Defendants, and the Parties shall be deemed to have reverted *nunc pro tunc* to their respective positions in the Action as of the date immediately prior to the execution of the Stipulation. Except as otherwise provided in the Stipulation, in the event the Settlement is terminated in its entirety or if the Effective Date fails to occur for any reason, the balance of the Settlement Fund including interest accrued therein, less any Notice and Administration Costs actually incurred, paid, or payable and less any Taxes and Tax Expenses paid, due, or owing, shall be returned to Defendants, in accordance with the Stipulation.

For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds (Doc. No. 347) and Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Class Representative (Doc. No. 349) are **GRANTED**. Class Counsel are awarded attorneys' fees in the amount of $5,400,000, plus interest, and reimbursement of $1,898,839.09 in expenses, and Plaintiff is awarded $35,000 as compensation for being the Class Representative. These awards shall be paid from the Settlement Fund.

The Court finds under Federal Rule of Civil Procedure 54(b) that there is no just reason to delay the entry of this Judgment, and the Clerk shall enter Judgment under Rule 58.

Case 3:16-cv-02443-9 Document 359 Filed 06/30/21 Page 45 of 47 PageID #: 26507

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of June 2021, I electronically filed the following document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filings to the following:

Eduard Korsinsky
Levi & Korsinsky, LLP
30 Broad Street
24th Floor
New York, NY 10004
(212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com

James A. Holifield, Jr.
Holifield Janich Rachal & Associates, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
(865) 566-0115
Fax: (865) 566-0119
Email: aholifield@holifieldlaw.com

*Attorneys for Plaintiff Eric Weiner*

Brandon R. Keel
Jessica Perry Corley
Lisa R. Bugni
King & Spalding LLP (Atlanta Office)
1180 Peachtree Street NE
Atlanta, GA 30309-3521
(404) 572-4717
(404) 572-4677
Email: bkeel@kslaw.com
Email: jpcorley@kslaw.com
Email: lbugni@kslaw.com

Joseph B. Crace, Jr.
Wallace Wordsworth Dietz
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-7896
(615) 742-6200
Fax: (615) 742-2700
Email: jcrace@bassberry.com
Email: wdietz@bassberry.com

*Attorneys for the Defendants*

*/s/ Benjamin A. Gastel*
Benjamin A. Gastel (BPR #28699)
BRANSTETTER, STRANCH &
JENNINGS, PLLC